**UNITED STATES of America**

v.

**Francisco Ramos VASQUEZ, Defendant.**

**No. CR 91–692.**

United States District Court,
E.D. New York.

April 23, 1992.

---

Andrew Maloney, U.S. Atty., E.D.N.Y., Brooklyn, N.Y. by Mark Wasserman, for U.S.

Daniel Murphy II, New York City, for defendant.

### MEMORANDUM AND ORDER

WEINSTEIN, District Judge:

Defendant was found guilty by a jury of conspiring to obstruct commerce by robbery. At the *Fatico* sentencing hearing, he disputed several of the government's suggested offense level calculations under the federal Sentencing Guidelines. Implicit in the defendant's argument was the suggestion that the crime was so ineptly planned and executed that the "real offense" was far less heinous than the Sentencing Guidelines suggested.

The ineptitude of the criminals is undisputed. They agreed to steal currency, which they hoped would be at least $5,000,-000, from an armored van while it was parked outside a 42nd Street Citibank branch in the center of midtown Manhattan. From the outset, there were a number of difficulties. Unbeknownst to the conspirators, one person who was ap-

proached to become part of the criminal team was a confidential government informant. He notified the FBI, which promptly placed a recording device in the automobile the conspirators were using to plan the robbery.

The conspirators were recorded discussing whether pedestrians would notice someone carrying a rifle on 42nd Street; whether it would be effective to shoot the gun into the air to distract police officers from noticing the robbery in progress; and which of several alternatives were meritorious—to drive the armored van into the Hudson River and return later with scuba equipment to retrieve the money, or to drive it into the back of an 18–wheel truck. They decided on driving the van away. Their hope was that the guards would leave the keys in the ignition while they went into the bank; alternatively, the conspirators would use an "ignition puller" to start the van without keys.

When the conspirators assembled in Brooklyn on the morning of the planned robbery, one was carrying a small bag with a protruding rifle. They had decided upon a rifle because they were unable to obtain a handgun (although almost any child in most grade schools in New York City could have told them how to procure one). One conspirator at first demurred from participating because he preferred to sleep well into banking hours. He was forcibly awakened to join the team.

The conspirators had some difficulty obtaining a container to hold the money. The wife of one of the conspirators was prevailed upon to relinquish the family's bright yellow laundry bag for this purpose. She had objected on the grounds that she needed the bag to carry dirty clothes to the laundromat that day. She was not charged in the indictment.

The conspirators had a "slaphammer," sometimes known as a dent-puller or ignition puller, to remove the ignition of the armored van. The tool is readily available on the streets of New York where it is used for the lawful purpose of repairing dents and for the unlawful purpose of pulling out locks in ignitions and car trunks.

A key part was missing. After several unsuccessful attempts to locate the part or obtain a new tool, the prospective robbers returned to one conspirator's home to regroup.

Leaving the rifle at the home, they proceeded to Manhattan to survey the scene of the prospective robbery. En route, their vehicle stalled several times on the F.D.R. Drive. FBI vehicles followed and a helicopter hovered overhead. Federal agents properly refrained from pushing the criminals' vehicle to the scene of the crime. *Cf. Jacobson v. United States*, — U.S. —, 112 S.Ct. 1535, 118 L.Ed.2d 147 (1992) (entrapment claim where Nebraska farmer induced into buying child pornography). All of the conspirators were arrested at the 42nd Street exit ramp; one had to be awakened so the FBI could read him his *Miranda* rights.

At the sentencing hearing, the government suggested a total offense level of 32, which would entail a Guideline range of 135 to 168 months. This was calculated from a base offense level of 20, with additional levels added for a number of offense characteristics. The defendant objects to several of the proposed offense level increases, and in addition urges several reductions.

■ Defendant urges unsuccessfully that he is entitled to a three-level reduction because he was convicted of a conspiracy under 18 U.S.C. § 1951 (1988), so the appropriate Guideline is not § 2B3.1, relating to robbery, but rather is § 2X1.1, relating to conspiracy. Under Guideline § 2X1.1, a three-level reduction is appropriate where the substantive offense which was the object of the conspiracy is not actually consummated. *See* Guideline § 2X1.1(b)(2):

> If a conspiracy, decrease by 3 levels, unless the defendant or a co-conspirator completed all the acts the conspirators believed necessary on their part for the successful completion of the substantive offense or the circumstances demonstrate that the conspirators were about to complete all such acts but for apprehension or interruption by some similar event beyond their control.

Defendant would be entitled to such a three-level reduction were § 2X1.1 applicable.

■ Guideline § 2X1.1, however, does not apply. The appropriate Guideline listed in the Appendix to the *Sentencing Guidelines Manual* for violations of 18 U.S.C. § 1951 is Guideline § 2E1.5, which triggers § 2B3.1 for the crime *"Hobbs Act ... Robbery"* (conceded by the parties to apply). *But cf. United States v. Sturm,* 671 F.Supp. 79, 91 n. 12 (D.Mass.1987) (decided while the Guidelines were in circulation but before enactment; citing § 2X1.1 in discussion of an attempt under the Hobbs Act), *aff'd in relevant part,* 870 F.2d 769 (1st Cir.1989). Guideline § 2B3.1 does not provide for reductions for unsuccessful conspiracies. *Cf. United States v. Koenig,* 952 F.2d 267, 272 (9th Cir.1991) (affirming denial of reduction in offense levels under § 2X1.1, since the pertinent Guideline did not provide for such a reduction).

■ Defendant persuasively argues that an increase of two levels under Guideline § 2B3.1(b)(1) for intending to take the property of a financial institution is inappropriate since the government did not show by a preponderance of the evidence that the armored van or any property in it was that of a financial institution. *See United States v. Lee,* 818 F.2d 1052 (2d Cir.) (preponderance standard to be applied at hearing where parties dispute presentence report), *cert. denied,* 484 U.S. 956, 108 S.Ct. 350, 98 L.Ed.2d 376 (1987). The government did not prove that there was anything in the van at any time up to the arrest. Undoubtedly defendant intended to steal bank funds, but even had the conspirators been successful in stealing the van and its contents, there is no showing that they would have obtained the assets of any financial institution. The conspirators undoubtedly "hoped" to obtain bank funds, but a hope cannot be transformed into intent under the Guidelines where the successful execution of the plan would, so far as the evidence showed, not result in obtaining any property of a financial institution. All purchasers of lottery tickets "hope" to win, but it is not possible to say that buying a

ticket embodies an "intent" to win. In effect the conspirators were buying a lottery ticket on an armored van that the court must assume was empty.

■ Defendant is entitled to the benefit of any ambiguity in the Guidelines as well as a presumption that the Guideline more favorable to him or her operates in the absence of a preponderance of proof supporting a more onerous Guideline. *Cf. United States v. Moreno,* 710 F.Supp. 1136 (E.D.Mich.1989) (where there is a conflict between Guideline and commentary, choose the interpretation which results in lower Guideline range), *aff'd,* 899 F.2d 465 (6th Cir.1990), *cert. denied,* — U.S. —, 112 S.Ct. 1504, 117 L.Ed.2d 643 (1992); *United States v. R.L.C.,* 112 S.Ct. 1329, 1332 (1992) (dicta) (where ambiguity in sentencing statute remains after interpretation of legislative history, court should choose the lower sentence under rule of lenity); *United States v. Chestman,* 947 F.2d 551, 570 (2d Cir.1991) (approving rule of lenity); *United States v. Roberts,* 735 F.Supp. 537 (S.D.N.Y.1990) (under rule of lenity lower sentence mandated where statute is ambiguous). A reduction of two levels must be granted.

■ The defendant objects to a three-level increase for possession of a dangerous weapon under Guideline § 2B3.1(b)(2)(E), arguing that the rifle was returned to one conspirator's home before the final ill-fated expedition to Manhattan. This objection must be rejected. A rifle is a dangerous weapon. It was in the possession of the conspirators during an initial stage of the conspiracy and they intended to use it in the commission of the crime. Possession at any point in the conspiracy with the intent to use the weapon suffices even when the conspiracy is modified during its course to eliminate the need for the weapon. This rule constitutes bad policy since it does not encourage abandoning weapons during the conspiracy. Since, however, it is unlikely that conspirators will know of the rule, it will not have much impact on the carrying of weapons. It ought, however, to be reviewed by the Sentencing Commission.

█ The defendant also objects to an increase under Guideline § 2B3.1(b)(6)(H) based upon the "fact" that the "loss" was $5,000,000 or more than $5,000,000. *See* Guideline § 2B3.1(b)(6) (*"Loss* (Apply the Greatest) ... (G) More than $2,500,000 add 6 [;] (H) More than $5,000,000 add 7."). The defendant argues that the government failed to prove the amount the conspirators intended to steal. In the defendant's view, if Guideline § 2B3.1(b)(6) applies and the sentence must be linked to an amount, the appropriate subsection would be § 2B3.1(b)(6)(A) governing a "loss" of $10,000 or less. Alternatively, he argues that since the conspiracy was unsuccessful, there was no loss at all. Defendant's reasoning is faulty, but so is the government's.

Taken to its logical end, defendant's argument would preclude taking into account an amount for all conspiracy, attempt, and solicitation offenses, since all failed crimes would result in no loss. The Sentencing Commission did not intend that result. When a defendant is sentenced for a conspiracy crime, his offense level is set according to the levels for the substantive offense. *See* Guideline § 2X1.1(a). As discussed above, the relevant Guideline is § 2B3.1 for the crime *"Hobbs Act ... Robbery." See* Guideline § 2E1.5. The government is correct that if it had proved that the conspirators "intended" to steal "more than $5,000,000" from the armored van, the appropriate Guideline would be § 2B3.1(b)(6)(H) (corresponding to a "loss" of "more than $5,000,000") and a seven-level increase would be required.

Where the government goes astray, however, is in its reliance on the commentary to Guideline § 2B1.1 (which also applies for § 2B3.1 crimes), discussing the valuation of loss. It reads:

"Loss" means the value of the property taken, damaged, or destroyed. Ordinarily [this is] the fair market value of the particular property at issue. Where the market value is difficult to ascertain or inadequate to measure harm to the victim, the court may measure loss in some other way, such as reasonable replacement cost to the victim.... *Examples:*

(1) In the case of the theft of a government check or money order, *loss refers to the loss that would have occurred if the check or money order had been cashed.* (2) In the case of a defendant apprehended taking a vehicle, the loss is the value of the vehicle even if the vehicle is recovered immediately.

In the case of a partially completed offense (*e.g.,* an offense involving a completed theft that is part of a larger attempted theft), the offense level is to be determined in accordance with the provisions of § 2X1.1 (Attempt, Solicitation, or Conspiracy).

Application Note 2 to Guideline § 2B1.1 (emphasis added). The government argues that $5,000,000 or "more than $5,000,000" is the appropriate amount since it is the loss "that would have occurred." Alternatively, the government relies on the internal reference to Guideline § 2X1.1 and its commentary, which uses the example of a thief who intends to steal $800,000 but succeeds in obtaining only $30,000. *See* Application Note 4 to Guideline § 2X1.1 The same example is cited in the commentary to Guideline § 1B1.3 (*"Relevant Conduct (Factors that Determine the Guideline Range")*), which applies for all theft crimes. *See* Application Note 6 to Guideline § 1B1.3. The government argues that the example suggests that the defendant, who intended to steal $5,000,000 or more but actually acquired nothing, should be sentenced to take into account the intent to steal the large amount.

This reasoning is faulty in several respects. First, the quoted commentary refers to circumstances of "partially completed conduct." This is not a reference to all inchoate offenses such as solicitation, conspiracy, or attempt crimes. Partially completed conduct refers to situations where the participants have completed "all of the acts necessary for the successful completion of part, but not all, of the intended offense." *See* Application Note 4 to Guideline § 2X1.1; *accord* Application Note 2 to Guideline § 2B1.1 ("a partially completed offense ... [is] an offense involving a completed theft that is part of a larger, at-

tempted theft"); Application Note 6 to Guideline § 1B1.3 ("a partially completed offense ... [is] (e.g., an offense involving an attempted theft of $800,000 and a completed theft of $30,000")).

As an example, where malfeasants intend to burn down a farm but succeed in dousing only the barn with gasoline and lighting a match, they would have completed all the preliminary acts necessary to commit the crime of arson to the barn. Under such circumstances, the conspirators would be sentenced according to the greater of: the offense level for the larger crime (arson to the farm), minus three levels, or the offense level for the smaller crime (arson to the barn). Thus the government, were the court to adopt its use of the $800,000—$30,000 theft example, would be arguing for application of the three-level reduction it opposed in connection with defendant's § 2X1.1 argument, *supra*, that this should not be considered a Hobbs Act conspiracy.

Applying the quoted commentary from Guideline § 2B1.1 as the government requests would present further problems, since it is in conflict with the commentary to Guideline § 2X1.1, to which it refers internally. Application Note 2 to Guideline § 2X1.1 cautions against using "speculative" specific offense characteristics of the substantive crime to increase offense levels where a defendant is charged with the inchoate offense—solicitation, conspiracy, or attempt. A court should take into account only those offense characteristics which were specifically intended by the defendant or which actually occurred. The commentary uses the example of defendants arrested during the conspiratorial stage of planning an armed bank robbery, suggesting that the offense level should not include "aggravating factors regarding possible injury to others, hostage taking, discharge of a weapon, or *obtaining a large sum of money*, because such factors would be speculative." *See* Application Note 2 to Guideline § 2X1.1 (emphasis added).

In the instant case, there was no proof that the conspirators "intended," within the meaning of the Guidelines, to take a specif-ic amount from the armored van. This is not to say that the government must show that conspirators know exactly how much money they will acquire if the conspiracy succeeds. In *United States v. Davis*, 922 F.2d 1385, 1392 (9th Cir.1991), the defendant did not know the precise value of the jewelry he tried to steal by fraud; nonetheless he was sentenced taking into account the intent to steal its actual value.

Similarly, in drug cases, a drug courier will be sentenced for carrying 100 grams of heroin even if he states that he intended to carry 75 grams of cocaine. *See generally* Guidelines § 2D1.1(a)(3) and § 2D1.1(c). *Cf. United States v. Cardenas*, 917 F.2d 683, 687 (2d Cir.1990) (in conspiracy case, defendant properly sentenced for actual amount of narcotics since the conspiracy involved that amount and the defendant could reasonably have foreseen it).

There was evidence that the defendant and his conspirators discussed their hope of recovering $5,000,000 or perhaps even more than $5,000,000 as a result of the conspiracy. The government proved that the conspirators had agreed to steal an armored van which they believed might be loaded with cash. But there was a failure of proof as to the amount the conspirators "intended" to steal within the meaning of the Guidelines, since there was no evidence of what was or would be in the van. At midday in midtown Manhattan, and in light of the inept planning by the conspirators, the van could have been arriving to pick up currency from the bank. Unlike *United States v. Davis*, 922 F.2d 1385, 1392 (9th Cir.1991), where a specific ring was involved and the plan was to defraud the victim of that specific piece of property, or *United States v. Van Boom*, 961 F.2d 145 (9th Cir.1992), where the bank robber demanded a specific amount from the bank tellers within the bank, here no proof established that the conspirators "intended" to steal $5,000,000. Assessing an amount as a basis for an increase in offense levels would be speculative under such circumstances. Defendant is entitled to a finding that he intended to steal the least amount

recognized by the Guidelines—up to $10,-000. *See* Guideline § 2B3.1(b)(6)(A).

The government had calculated a total offense level of 32. Taking into account the base offense level, the suggested increases, and the defendant's criminal history category, the defendant would have been subject, as previously noted, to imprisonment for 135 to 168 months. Reducing the offense levels in accordance with this memorandum, the proper total offense level is 21 and the relevant Guideline range is 41 to 51 months.

The defendant is sentenced to 41 months in prison, a 50 dollar assessment, and 3 years probation. The minimum term under the Guideline range is applicable since the defendant has now conceded that he is not cut out for a life of crime, and probation believes that he is now motivated towards honest work in support of his family, which still expresses its love for him.

The defendant will serve approximately three years in prison. Given the dangerous activity he participated in, his lack of contrition and cooperation and the fact that he put the government to the expense of a trial and considerable police activity, the sentence is fair. Application of the Guidelines as interpreted presents no conflict with the conscience of the court.

SO ORDERED.