UNITED STATES of America,
Plaintiff–Appellee,

v.

Damon D. PAYTON, Defendant–
Appellant.

No. 99–1058.

United States Court of Appeals,
Seventh Circuit.

Argued June 15, 1999.

Decided Dec. 6, 1999.

Deirdre A. Durborow (argued), Office of the United States Attorney, Criminal Division, Fairview Heights, IL, for Plaintiff–Appellee.

Phillip J. Kavanaugh (argued), Office of the Federal Public Defender, East St. Louis, IL, for Defendant–Appellant.

Before ESCHBACH, COFFEY and RIPPLE, Circuit Judges.

COFFEY, Circuit Judge.

On July 27, 1997, a federal grand jury sitting in the Southern District of Illinois returned an indictment charging the defendant-appellant Damon Payton ("Payton") with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). On March 18, 1998, Payton pled guilty to the indictment, and on December 29, 1998, the court sentenced Payton to 96 months' imprisonment, three years of supervised release, and an $800 fine.

Payton appeals the district court's decision to impose a 4–level sentencing enhancement under U.S.S.G. § 2K2.1 (b)(5) for possession of a weapon with the intent that the weapon would be used in connection with another felony, arguing that there was insufficient evidence to establish that he planned to commit a felony. Payton also argues that the district court erred in refusing to grant a downward departure based on his diminished mental capacity and the fact that the guidelines overstated his criminal history. We affirm.

On July 1, 1997, officers of the Bellevue, Illinois Police Department went to Nathaniel Williams' home in response to a report of shots fired. When Detective Mark Krampf of the Bellevue Police Department arrived at Williams' house, he found Payton, a convicted felon, lying on the living room floor with a close-range gunshot wound to his left leg just below the buttocks. Detective Krampf called for an ambulance and conducted a search of the other rooms in the house, in accordance with standard police procedure, to ensure his safety while on the scene. During the search of the bedrooms, Officer Krampf discovered two winter coats lying on a bed, a shotgun shell, and identification for Payton and Williams. Subsequently, Payton was transported to the hospital and treated for gunshot wounds.

When initially interviewed by the police, Payton, his friend Williams, and Payton's then-girlfriend, Kara Moore, informed officers that Payton was wounded in a drive-by shooting. But, after they were confronted with the absence of any physical evidence supporting their story, both Williams and Moore changed their story and told the police that Payton shot himself accidentally while attempting to put the shotgun in his pants pocket and that Payton had planned to use the shotgun to rob a pawn-shop. They also told police that Williams had agreed to help Payton carry out the robbery and that Moore was to be the driver of the get-away car. Both Williams and Moore were interviewed separately and provided the same essential details concerning the robbery plan: that Payton wanted to rob the pawn shop because the owner "ganked" (cheated) him; that Payton and Williams would be armed during the robbery because the shop owner had a pistol at the store; and that Payton would wear one of Williams' winter coats to conceal the shotgun. Williams further informed the authorities that after Payton had shot himself, he (Williams) hid the shotgun in the duct work of the house.

Meanwhile, after Payton was treated and released from the hospital, he was transported to the Bellevue Police Station, where Detective Krampf interviewed him on July 4, 1997. Payton told Krampf about his plan to rob the pawn shop and stated that while he was attempting to put the sawed-off shotgun in his back pocket on July 1, he accidently shot himself. When Payton observed Officer Krampf begin to reduce his oral statement to writing, Payton stated that he did not want to talk

anymore because he was on parole and knew "what he could face" for using a shotgun at this time. Payton was turned over to federal authorities for prosecution for being a felon in possession of a firearm.

On March 18, 1998, Payton pled guilty to being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Payton entered into a written plea agreement on July 1, 1997. In the plea agreement, Payton reserved the right to challenge the § 2K2.1(b)(5) sentencing enhancement that the government indicated it would seek based on the allegation that Payton possessed the shotgun with the intent to use it in the commission of a robbery.

In his objections to the Pre–Sentence Investigation Report ("PSR") filed on December 22, 1998, and at the December 29, 1998 sentencing hearing, Payton argued that § 2K2.1(b)(5) was inapplicable because the evidence offered by the government in support of its request for an enhancement was unreliable hearsay. In support of his argument, Payton offered his hospital records to demonstrate that the condition of his wound made the shotgun blast the more likely product of an accident. Payton also submitted copies of the written police statements of Williams and Moore to demonstrate that their statements concerning the events leading up to Payton's injuries were inconsistent, namely that they first told police that Payton was shot in a drive-by shooting and then told police about the robbery plans. In addition, Payton requested a downward departure from the guidelines sentence on the grounds of his diminished mental capacity and the fact that the guidelines overstated his criminal history.

The district court overruled Payton's objections to the PSR and concluded that the § 2K2.1(b)(5) enhancement was warranted because the hospital records submitted by Payton did not support his contention that the shotgun discharged when it accidentally fell to the floor but that in any event, the point was irrelevant to the applicability of § 2K2.1(b)(5). The court reasoned that

the credible evidence established that Payton intended to use the shotgun to carry out the pawn shop robbery and that, because Payton admitted to possessing the shotgun at the time he was shot, it did not matter how the shotgun was discharged. The court also rejected Payton's contentions that the statements of Moore and Williams concerning the robbery plans were unreliable hearsay. The court found that, although the statements of Moore and Williams were not identical, they were sufficiently consistent and, more importantly, were corroborated by Payton's own admission regarding the planned robbery. Lastly, the judge denied Payton's request for a downward departure and sentenced him to 96 months' imprisonment, three years of supervised release, and an $800 fine.

Payton raises the same three challenges to his sentence that he raised in the trial court: (1) that the § 2K2.1(b)(5) enhancement was inapplicable because the enhancement was not supported by reliable evidence; and (2) that the district court should have departed downward.

## A. Sentencing Enhancement

 We review a district court's application of the sentencing guidelines de novo but defer to the court's finding of facts unless they are clearly erroneous. *See United States v. Castellanos*, 165 F.3d 1129, 1131 (7th Cir.1999). "A factual determination is clearly erroneous only if, after considering all the evidence, the reviewing court is left with the definite and firm conviction that a mistake has been committed." *United States v. Messino*, 55 F.3d 1241, 1247 (7th Cir.1995) (quoting *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985)) (internal quotations omitted). Additionally, our review of a district court's assessment of a witness's credibility is especially deferential. *See United States v. Fiore*, 178 F.3d 917, 924 (7th Cir.1999).

■ Initially, Payton argues that § 2K2.1(b)(5) requires proof that he possessed the shotgun while actively employed in *committing* the robbery.[1] Relying on his hospital records, Payton maintains that the shotgun discharged when it accidentally fell to the floor, thereby disproving the government's theory that Payton shot himself while practicing with the shotgun in preparation for robbing the pawn shop.

■ In *United States v. Patterson*, 97 F.3d 192 (7th Cir.1996), we specifically rejected the argument that the § 2K2.1(b)(5) enhancement should be applied using the active employment test announced by the Supreme Court in *Bailey v. United States*, 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995). *See also United States v. Wyatt*, 102 F.3d 241, 247 (7th Cir.1996); *United States v. Carmack*, 100 F.3d 1271, 1280 (7th Cir.1996) ("We recently determined that application of [U.S.S.G. § 2K2.1(b)(5)] was not altered by *Bailey*"). Rather, "[s]o long as the government proves by a preponderance of the evidence that the firearm served some purpose with respect to the felonious conduct, section 2K2.1(b)(5)'s 'in connection with' requirement is satisfied." *Wyatt*, 102 F.3d at 247; *see also United States v. Rogers*, 46 F.3d 31, 33 (7th Cir.1995) (government is not required to show a direct nexus between possession of the weapon and the felony). Further, the government is not required to establish that the defendant's physical possession of the weapon was simultaneous with the defendant's intent to use the weapon in connection with another felony. Consequently, in *Patterson*, 97 F.3d at 192, we upheld the imposition of the § 2K2.1(b)(5) enhancement even though the defendant was not, at the moment of his arrest, engaged actively either in the sale of drugs or in using the weapon although both drugs and the gun

were found in the trunk of the car that he had been driving. *See also Wyatt*, 102 F.3d at 243 (§ 2K2.1(b)(5) enhancement justified where guns were found in defendant's home, even though they were not located in the same room as the drug paraphernalia and no drugs were found in defendant's house or car).

In this case, both Williams and Moore testified that Payton had planned to use the shotgun to rob a pawn shop owner. They gave detailed accounts of their anticipated roles in the robbery and Williams provided the police with the exact location of the shotgun in question. More importantly, Payton admitted to possessing the weapon and Officer Krampf testified that Payton had told him of the plan to rob the pawn shop. With this information in the record, we are convinced that the evidence at Payton's sentencing hearing established a sufficient nexus between his possession of the shotgun and the intention to use that gun in connection with another felony. Accordingly, we refuse to hold that the district court erred in concluding that a § 2K2.1(b)(5) enhancement was warranted.

■ Payton's second challenge to his sentence is that the district court erred by imposing the enhancement based on unreliable hearsay evidence. As Payton recognizes, hearsay is admissible at a sentencing hearing so long as (1) the evidence is reliable and (2) the defendant has the opportunity to rebut the evidence. *See United States v. McClellan*, 165 F.3d 535, 552 (7th Cir.), *cert. denied*, —— U.S. ——, 119 S.Ct. 1512, 143 L.Ed.2d 663 (1999). *See also United States v. Robinson*, 164 F.3d 1068 (7th Cir.1999).

■ Payton's emphasis on inconsistencies between the earlier and later statements of Moore and Williams offers, at most, an alternative view of the evidence.

---

1. Section 2K2.1(b)(5) provides, in pertinent part:

If the defendant used or possessed any firearm ... in connection with another felony offense; or possessed or transferred any

firearm ... with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense, increase [the base offense level] by 4 levels.

As we have noted numerous times, "[a] district court's choice between two permissible inferences from the evidence cannot be clearly erroneous." *Wyatt*, 102 F.3d at 246 (citing *Anderson*, 470 U.S. at 574, 105 S.Ct. 1504). We agree with the district court's conclusion that instead of creating a contradiction, Williams' and Moore's later statements merely elaborated on their earlier ones. We also find significant, as the trial judge did, the fact that Payton's own statement supported the imposition of the enhancement. Finally, the police found evidence of the robbery plan, including the winter coats and the shotgun shell in Williams' house on the day that Payton was shot. This evidence, along with the statements of Williams, Moore, and Payton, was sufficient for the district court to find that a preponderance of the evidence supported the enhancement.

Finally, Payton asks us to overturn the district court's implicit credibility findings in favor of Detective Krampf. This we decline to do. "As a matter of sound jurisprudence, we do not second-guess the sentencing judge because he or she has had the best 'opportunity to observe the verbal and non-verbal behavior of the witnesses focusing on the subject's reactions and responses to the interrogatories, their facial expressions, attitudes, tone of voice, eye contact, posture and body movements,' as well as confused or nervous speech patterns in contrast with merely looking at the cold pages of an appellate record." *United States v. Branch*, 1999 WL 984390, at *7 (Oct. 28, 1999) (quoting *United States v. Tolson*, 988 F.2d 1494, 1497 (7th Cir. 1993)); *see Fiore*, 178 F.3d at 924 ("we give almost absolute deference to a court's credibility determinations because the court had the opportunity to hear the witness's testimony firsthand"). On the record before us, we see no reason to reach a different conclusion than the district court regarding Krampf's credibility.

**B. Downward Departure**

■ In Payton's final challenge to his sentence, he argues that the district court erred by not granting his request for downward departure. As Payton's counsel acknowledges, however, "[w]e cannot review a district court's discretionary refusal to depart from the sentencing range recommended by the guidelines unless that refusal was based on the court's erroneous belief that it had no power to make the requested departure." *Fiore*, 178 F.3d at 926. Because a reading of the sentencing hearing transcripts makes it clear and unambiguous that the judge recognized his authority to depart from the guidelines and merely chose to decline to exercise his discretion to depart, we do not consider this issue further.

The district court correctly applied § 2K2.1(b)(5) of the sentencing guidelines and the court's factual findings in support of the sentencing enhancement were not clearly erroneous. Accordingly, Payton's sentence is

AFFIRMED.