In the
United States Court of Appeals
For the Seventh Circuit

Nos. 98-3932, 98-3963, 98-4299, 99-1532 & 99-2163

United States of America,

Plaintiff-Appellee,

v.

Jeffrey Szakacs, Daniel Spanley, John M. Neff,
Tyrone Noble and Brian Baloski,

Defendants-Appellants.

Appeals from the United States District Court
for the Northern District of Indiana, Hammond Division.
No. 97 CR 155--James T. Moody, Judge.

Argued November 11, 1999--Decided May 2, 2000

Before Bauer, Easterbrook and Kanne, Circuit Judges.

Kanne, Circuit Judge.  Five defendants who
planned and attempted to carry out a robbery of
a major Indiana gun store appeal their sentences
for convictions on one count of conspiracy to
steal firearms from a licensed firearms dealer.
The five, Jeffrey Szakacs, Daniel Spanley, John
M. Neff, Tyrone Noble and Brian Baloski, were
among a group of seven men who planned to rob
Fetla's Trading Co., a gun and sporting goods
store in Valparaiso, Indiana. Because of the
local police's quick response, the attempt was
foiled and the seven were arrested before they
made it to the store. All were indicted and
eventually pleaded guilty. The district court
sentenced Szakacs, Spanley and Baloski to thirty
months in prison, Neff to thirty-three months and
Noble to eighty-four months. The defendants now
appeal the calculation of their sentences under
the United States Sentencing Guidelines. We
affirm the upward adjustment of the defendants'
sentences for offenses involving fifty or more
firearms, but because the phrase "another felony
offense" was applied incorrectly, we vacate that
four-level upward adjustment.

I.  History

     The defendants, members of the Gangster
Disciples street gang, gathered in the afternoon

of November 6, 1997, at a fast-food restaurant in Crown Point, Indiana, and decided to meet later at the Schererville apartment of John Neff. Early that evening, the defendants met at Neff's apartment and agreed to burglarize Fetla's gun shop by cutting a hole in the wall, as their leader, Tyrone Noble, had done successfully at another Indiana gun shop a few days earlier.

Fetla's stocks a large number of firearms, many of them in locked display cases or cabled together, making the transportation of large numbers of weapons relatively easy for a group of men with trucks and burglary equipment. On the night of the planned burglary, Fetla's had a stock of more than 1,000 firearms, most of them locked in glass display cases. The store also had shopping carts available for customers and backpacks for sale, which could have been used to carry the weapons. The defendants planned to take "big cases" of guns and "grab everything they could" with the intention of arming their gang for a street war.

The group decided to use two trucks for the burglary. Noble, James Blanton and Baloski first would drive in a black pickup truck to East Chicago, Indiana, to get tools needed for the burglary. The others, including Neff, Christopher Hicks,/1 Spanley and Szakacs, would drive a red pickup truck to the rendezvous point, a Speedway gas station in Valparaiso, to wait for Noble and the others. During the ride from Schererville to Valparaiso, one of the defendants in the red truck aimed a Smith & Wesson 9mm semiautomatic handgun out the window and fired it into an open field. The reason for this is not clear.

A Valparaiso police officer patrolling the area noticed the occupied red truck waiting in the parking lot of the gas station that was closed at that time. He became suspicious, and as he turned his car around to investigate, the truck drove away from the station. The officer chased the truck, pulled it over and interrogated the four men. Apparently suspicious of their stories, the officer directed the men to get out of the truck, searched it and found the 9mm gun. The men were arrested and gave confessions leading to the execution of a search warrant on Neff's apartment the following morning. The occupants of the second truck, seeing their confederates' truck on the side of the road rather than at the Speedway gas station, called off the heist and returned to Neff's apartment. Police arrested the remaining three men in the morning when they searched Neff's home.

II.  Analysis

The defendants challenge the district court's application of the Sentencing Guidelines. First, they claim that the court erred in finding that the robbery involved fifty or more firearms, which merits a six-level enhancement under sec. 2K2.1(b)(1). We review for clear error a sentencing court's findings of fact, reversing only if "after considering all of the evidence, the reviewing court is left with the definite and firm conviction that a mistake has been committed." See United States v. Wyatt, 102 F.3d 241, 246 (7th Cir. 1996) (internal citation omitted). Second, the defendants collectively claim that the sentencing court erred in interpreting the phrase "another felony offense" in sec. 2K2.1(b)(5). We review de novo a sentencing judge's resolution of a question of law. See United States v. McClanahan, 136 F.3d 1146, 1149 (7th Cir. 1998). Finally, Noble individually challenges the use of hearsay evidence at his sentencing hearing. Whether hearsay contains the indicia of reliability necessary to be used in a courtroom is a trial court decision that we review only for abuse of discretion. See United States v. Hall, 165 F.3d 1095, 1108 (7th Cir. 1999); United States v. Sinclair, 74 F.3d 753, 758-59 (7th Cir. 1996).

A.  Number of Firearms

Defendants convicted of conspiracy are sentenced according to Guidelines sec. 2X1.1, which directs the court to apply the base-offense level and any adjustments from the guideline for the substantive offense underlying the conspiracy, in this case sec. 2K2.1. U.S. Sentencing Guidelines Manual sec.sec. 2X1.1, 2K2.1. Section 2K2.1(b)(1) enhances the defendants' sentences by six levels if the offense involved "50 or more firearms." U.S.S.G. sec. 2K2.1(b)(1). Because the defendants here were arrested before they ever set foot on Fetla's property, they argue that the number of firearms "involved" is too speculative to support an enhancement of their sentences. They cite Application Note 9 to sec. 2X1.1 for support: "But the only specific offense characteristics from the guideline for the substantive offense that apply are those that are determined to have been specifically intended or actually occurred. Speculative specific offense characteristics will not be applied." The example provided by the Sentencing Commission suggests that in the "conspiratorial stage of planning an armed bank robbery," the offense would not include the possibility of "obtaining a large sum of money," because that "would be speculative." Id.

The analogy between this crime and the hypothetical bank robbery in the example overlooks some key distinctions. In the example,

the culprits were apprehended in the "conspiratorial stage of planning" in which the attendant circumstances of the proposed crime, such as the amount of money or other valuables in the vault, may not even be known. The conspirators' ability to carry out the crime, or even to carry away many bags of money, might be limited by the number of henchmen that could be rounded up for the heist. They may not have a target selected or know whether they intend to steal cash from the vault or valuables from safe deposit boxes. To rely on this type of unanswered question seems too speculative for purposes of enhancing the sentences.

The district court cited United States v. Vasquez, 791 F.Supp. 348, 352-54 (E.D.N.Y. 1992), as an example of impermissible speculation. In that case, the defendants were arrested en route to a planned robbery of an armored car in which they hoped to get $5,000,000. The court refused to enhance the sentence to reflect the $5,000,000 value because "there was a failure of proof as to the amount the conspirators 'intended' to steal . . . since there was no evidence of what was or would be in the van." Id. at 353. This aptly illustrates the degree of uncertainty that we believe would run afoul of the Guidelines. To the defendants' knowledge, the armored car may have been empty, it may have contained a hundred lottery tickets or $5,000,000. Without some proof both of their intent and the attendant circumstances of the crime, the $5,000,000 is speculation, not reasonable certainty.

The concept of reasonable certainty does not permit speculation, but it also does not require absolute certainty. The Guidelines, while cautioning strongly against speculative findings, emphasize the need to consider intended conduct as well as completed conduct. In the same application note quoted by the defendants, the Guidelines remind the court that "[i]n an attempted theft, the value of the items that the defendant attempted to steal would be considered." U.S.S.G. sec. 2X1.1 application note 2. Furthermore, the firearms guideline tells the court to "count only those firearms that were unlawfully sought to be obtained." U.S.S.G. sec. 2K2.1 application note 9. Without speculating, the sentencing court may accept evidence that a defendant intended a specific target of a crime and then assess the actual value of that target, such as a plan to steal the Mona Lisa. The court may not assess the value of all paintings in the Louvre if there was no evidence that the burglar intended to take any particular painting or even knew what the museum contained. The latter is speculation supported only by wish and chance, while the former is a reasoned attempt to assess

the value of the burglar's target.

The trial court found that the evidence showed the seven defendants specifically intended to steal fifty or more firearms. The Guidelines require that the evidence of intended conduct be "established with reasonable certainty," a standard that does not invite mathematical precision. U.S.S.G. sec. 2X1.1(a). Where we find support in the record for the district court's finding, we cannot say that it is clearly erroneous. See United States v. Maggi, 44 F.3d 478, 484 (7th Cir. 1995).

Here, there was evidence of the defendants' intent, their ability to carry out the crime and the contents of the store. The conspiracy included seven men who had two trucks and burglary tools, along with access to shopping carts and carrying bags. According to their own testimony, they planned to steal enough guns so that they could keep two each and sell some others with the ultimate intention of arming the members of their street gang. Fetla's manager, Brian Lobody, testified that the store contained more than 1,000 guns, including hundreds of handguns that could be carried easily to the trucks. Most telling, in his statement following arrest, Szakacs told federal agents:

[W]e were supposed to . . . back the van up [to the loading docking] you know, turn the lights off, . . . open up the back door and just start loading. You know how they have the big cases of the handguns? . . . We are supposed to carry those out and put them into the van. And we were suppose to load all that . . . whatever bullets we can get, clips we can get, shotguns, rifles, we are supposed to grab everything that we could.

To qualify for the six-level enhancement, the seven defendants needed to carry only an armload of guns each, yet their plan was to grab everything that they could lay their hands on and load up the trucks. This is more than the evidence needed to establish with reasonable certainty that the conspiracy involved fifty or more firearms. The district court's enhancement in this regard is correct.

B.  Use of a Firearm

1.  The Stolen Firearms

The defendants' sentences also were enhanced four levels under sec. 2K2.1 because "the defendant used or possessed any firearm or ammunition in connection with another felony offense," the other felony offense being the state law crime of conspiracy to commit burglary.

U.S.S.G. sec. 2K2.1. The government contends that any federal offense (in this case, conspiracy to steal firearms from a licensed dealer) which includes conduct that can be characterized as a state law offense (here, conspiracy to commit burglary) qualifies for the enhancement. What makes this case difficult is that the state law offense and the federal offense were essentially the same crime. Burglary is the entering of a building with the intent to commit a felony, see Hossman v. State, 482 N.E.2d 1150, 1154 (Ind. App. 1985), and the felony here of course was the theft of firearms. This presents an issue of first impression for this Court: Does a state law crime that occurs simultaneously with a federal weapons crime qualify as "another felony offense" for purposes of the enhancement under sec. 2K2.1(b)(5)?

Although new to us, the issue has been addressed by the Fifth and Sixth Circuits with divided results. See United States v. McDonald, 165 F.3d 1032, 1036-37 (6th Cir. 1999); United States v. Sanders, 162 F.3d 396, 399-402 (6th Cir. 1998); United States v. Armstead, 114 F.3d 504, 511-13 (5th Cir. 1997). In Armstead, the first case to be decided, the defendants broke into a pawn shop that was licensed to sell firearms and stole nineteen guns. The defendants pleaded guilty to stealing firearms from a licensed dealer, but were also charged by the State of Texas with burglary. The sentencing judge applied the four-level enhancement for possessing a firearm in connection with another felony based on the state burglary charge.

The Fifth Circuit cited two reasons to affirm. First, it pointed out that the phrase "used or possessed the firearm . . . in connection with a crime of violence" in a different Guidelines provision, see U.S.S.G. sec. 4B1.4(b)(3)(A), permits an enhancement when a firearm is used in a contemporaneous crime of violence. See Armstead, 114 F.3d at 512-13 (citing United States v. Guerrero, 5 F.3d 868 (5th Cir. 1993)). Guerrero, however, does not shed much light here. In Guerrero, the defendant was charged with possessing a stolen firearm and possession of a firearm by a felon based on weapons the defendant procured during a burglary, which is a crime of violence. 5 F.3d at 869. The court held that "'in connection with' does not necessarily exclude possessing the firearms as fruits of the crime the possessor is contemporaneously committing." Id. at 872.

We do not necessarily disagree with that reasoning, but the issue for us is what constitutes another crime, not whether the firearm offense was connected to the state law

crime. The outcome in Guerrero might be very different if sec. 4B1.4(b)(3)(A) read "in connection with another crime of violence," in which case counting the instant crime of violence again as a state law crime would be duplicative. We are concerned with the impermissible double counting of offense characteristics by the concurrent description of them as state law crimes, a danger not raised by guidelines that direct the court to look at "connected" crimes. Therefore, we find this rationale to be unpersuasive.

The second reason given by the Armstead court was that "[n]othing in the Guidelines suggests that contemporaneous crimes cannot be considered when enhancing a sentence." Armstead, 114 F.3d at 513. To the extent "contemporaneous" means "existing or occurring during the same time," we agree. Webster's III New International Dictionary 491 (3d ed. 1986). In fact, we have regularly upheld sentences for multiple crimes that occurred during the same period of time. See, e.g., United States v. Payton, 198 F.3d 980 (7th Cir. 1999) (upholding sentence enhancement under sec. 2K2.1(b)(5) for contemporaneous crimes of being a felon in possession of a firearm and possession of a shotgun with intent to use it in a robbery). Contemporaneous cannot mean the same crime, however, without denuding the word "another" of all meaning. Something in the Guidelines--the word "another"--does suggest that same offense conduct cannot be characterized as both a federal crime and a state crime, and in that respect we disagree with the Armstead court.

The Fifth Circuit expressed an additional policy justification for its holding. Amendment 374 to the Guidelines says that the "firearms statutes often are used as a device to enable the federal court to exercise jurisdiction over offenses that otherwise could be prosecuted only under state law." Id. at 513 (quoting U.S.S.G. app. C., amend. 374). This purportedly "reflects the concern for public safety which the Guidelines sought to achieve." Id. It is unclear how a jurisdictional hook reflects a concern for public safety more than any other statute does, but regardless, that insight does not support the conclusion that both the jurisdictional tool and the state law offense were intended to be punished federally. More naturally, the hook allows federal prosecutors the justification to reach criminal conduct that otherwise would be solely the responsibility of state prosecutors. It does not necessarily require the double counting of offense conduct as both federal and state crimes given the use of the word "another" in the guideline.

Since Armstead, the Sixth Circuit has twice addressed this issue and expressly disagreed with the Fifth Circuit's holding. In Sanders, the defendant pleaded guilty to being a convicted felon in possession of firearms and knowingly transporting stolen firearms. Sanders, 162 F.3d at 397. Sanders and two co-defendants burglarized a pawn shop and stole seventy-three firearms. His sentence was enhanced four levels pursuant to sec. 2K2.1(b)(5) because the burglary could have been charged as a state law offense. Id. at 400. The Sixth Circuit reversed, holding that the "Guidelines do not authorize a major four-level increase under the instant facts simply because the state could also have brought a prosecution for the one and the same burglary." Id.

The court offered three reasons for rejecting Armstead. First, reading the guideline to allow a state law offense based on the exact same offense conduct to count as a "another felony offense" renders "the word 'another' . . . superfluous, and of no significance to the application of that provision." Id. Since almost all federal crimes can also be characterized as state crimes, the government's reading of 'another felony offense' would permit the "automatic application of this significant 4 level Guideline enhancement." Id.

Second, the Sixth Circuit looked to Application Note 18 to sec. 2K2.1(b)(5). That provision states, "'another felony offense' and 'another offense' refer to offenses other than explosive or firearms possession or trafficking offenses." U.S.S.G. sec. 2K2.1(b)(5) application note 18. The probative value of this note is equivocal. Burglary is not necessarily a "firearms possession or trafficking offense;" burglary is the breaking into and entering a building to commit a felony. However, the felony in this burglary was the theft of weapons, which arguably makes the burglary a "possession or trafficking offense" in the general sense that the note uses the phrase. The note refers to "possession and trafficking offenses" and not to specific statutory provisions, which suggests a level of generality in the phrase to indicate that breaking into and entering a building to steal weapons would be one of the "possession and trafficking offenses" excluded from "another felony offense."

Third, the Guidelines differentiate between base-offense levels and specific-offense characteristics, and courts should not adjust a sentence upward based on factors already reflected in the base-offense level. Since the Guidelines already account for the theft behavior, see U.S.S.G. sec. 2K2.1 (covering

"unlawful receipt, possession, or transportation of firearms"), the Sixth Circuit "declines to adjust Defendant's offense level upward by four levels for contemporaneous conduct already included in the Guideline calculation." Id. at 402. Because almost every weapons crime could also be charged as a state law offense, Armstead's reading of the guideline would lead to a routine four-level enhancement and defeat the purpose behind the structure to the Guidelines. See also McDonald, 165 F.3d at 1037 (holding that an enhancement for stealing firearms during the burglary of a pawn shop would constitute double counting and "would thus be contrary to the guideline's underlying purpose.").

The Sixth Circuit did not close the door on all enhancements based on purported state law crimes, only crimes that truly constituted double counting. The court held that state law crimes that occur contemporaneously to federal weapons crimes could support enhancements under sec. 2K2.1(b)(5) if there was "a finding of a separation of time between the offense of conviction and the other felony offense, or a distinction of conduct between that occurring in the offense of conviction and the other felony offense." Sanders, 162 F.3d at 400. Thus, a defendant who steals a firearm and then engages in a shootout with police, robs the liquor store down the street or files the serial number off the firearm, could receive an enhancement for "another felony" because the conduct violates either a state or federal law.

In fact, this has been the way this Court has applied sec. 2K2.1(b)(5). All six published cases applying the phrase "another felony offense" have involved crimes separated in time or by a "distinction of conduct." See Payton, 1999 WL 1101622, at *2 (upholding enhancement for possession of shotgun and intent to use the weapon in a robbery); United States v. Santoro, 159 F.3d 318, 319-20 (7th Cir. 1998) (possession of a firearm by a felon and transferring a firearm with knowledge it would be used in drug trafficking); United States v. Patterson, 97 F.3d 192, 195 (7th Cir. 1996) (possession of a firearm by a fugitive and drug trafficking); United States v. Gilmore, 60 F.3d 392, 394 (7th Cir. 1995) (possession of a firearm by a felon with knowledge that they would be used to commit "another felony offense"); United States v. Messino, 55 F.3d 1241, 1255-56 (7th Cir. 1995) (possession of a firearm by a felon and unlawfully transferring firearms with knowledge that they would be used to commit crimes); United States v. Rogers, 46 F.3d 31, 32 (7th Cir. 1995) (possession of a firearm by a felon with reason to believe it would be used in another felony

offense). While these cases did not involve enhancements for state law crimes that were part and parcel of the federal weapons offense, as the case at bar does, they do illustrate a much less strained interpretation of sec. 2K2.1(b)(5) than that proposed by the government. Our reading of this section today merely reinforces the straightforward application of the enhancement that has been used in this circuit for several years and rejects the approach represented by the Armstead court./2

The government proposes an elements-based test that would allow the application of the upward adjustment for every federal weapons violation that overlaps with a state law crime so long as the state crime has at least one element different from the federal crime. Burglary, which requires the illegal entry into a building, could be used to enhance theft of firearms, which does not require illegal entry, according to this position. The government does not cite any authority supporting the adoption of this test, but simply relies on Armstead. However, even Armstead did not propose an elements test. While we do not believe this to be an irrational approach, the language of the Guidelines does not compel this reading. More importantly, this test fails to address the key weakness noted by the Sanders court. Because nearly every federal weapons offense could be simultaneously charged as a state crime, allowing the state crime to count as "another felony offense" renders that term superfluous; it could just as easily read "any felony offense." We do not lightly render a statute's language a dead letter, and we decline to do so today.

2.  The Test-Fired Firearm

The probation office and the district court offered an alternate reading of sec. 2K2.1(b)(5), which counts the firearm that the defendants test-fired on the way to the rendezvous, rather than the weapons they conspired to steal, as the weapon used "in connection with another felony." However, the government rejected this interpretation, and the government argued (as discussed in the preceding section) that only the weapons that were the object of the firearms conspiracy count toward the sec. 2K2.1(b)(5) adjustment. We accept the government's position, and following the reasoning in Sanders, we will vacate the four-level sentence enhancement for use of a weapon in another felony offense.

C.  Noble's Sentencing

Defendant Noble, the supposed "governor" of this Gangster Disciples troop, appeals the use of

hearsay testimony at his sentencing hearing. Specifically, he challenges the district court's decision to permit a federal agent to testify based on her knowledge of other crimes in which Noble had been involved. The agent gleaned much of this information from written summaries of police investigations and interviews with co-defendants who were not present in court. Noble did not object to this testimony at sentencing, so we review only for plain error. See United States v. Olano, 507 U.S. 725, 731 (1993). The Supreme Court has noted that plain errors must be both plain and errant, see id. at 731, but more than that, they must affect substantial rights, see Fed. R. Crim. P. Rule 52(b), and "seriously affect the fairness, integrity or public reputation of judicial proceedings." Olano, 507 U.S. at 732.

At the sentencing hearing, Bureau of Alcohol, Tobacco and Firearms Special Agent Cynthia Carroll testified about Noble's participation in another theft of firearms from an Indiana firearms dealer, this one in Merrillville, a town near Schererville. Carroll had personally interviewed the Merrillville store's licensee and reviewed the co-defendants' statements, which were against their own interest, and police reports regarding that crime. Noble was given advance notice that the government intended to use this hearsay evidence and a full opportunity to cross-examine Carroll, which we have indicated is important to promoting the fairness of the proceeding. See United States v. Johnson, 997 F.2d 248, 254 (7th Cir. 1993).

The admission of the particular hearsay evidence at Noble's sentencing was neither errant nor seriously affected the fairness of the proceeding since all indications were that the evidence was reliable and corroborated. The Sentencing Guidelines expressly permit the use of hearsay evidence that has "sufficient indicia of reliability to support its probable accuracy." U.S.S.G. sec. 6A1.3; see United States v. Burke, 148 F.3d 832, 836 (7th Cir. 1998); United States v. Anaya, 32 F.3d 308, 311 (7th Cir. 1994); United States v. Morales, 994 F.3d 386, 389 (7th Cir. 1993). We have previously allowed written summaries of an agent's interviews with witnesses and the defendant to be used at sentencing, see United States v. Gerstein, 104 F.3d 973, 978 (7th Cir. 1997), as well as an agent's testimony based on police reports and other forms of out-of-court testimony. See United States v. Francis, 39 F.3d 803, 806, 809-11 (7th Cir. 1994).

Statements against penal interest have long been considered reliable enough for use at trial under the Federal Rules of Evidence, see Fed. R. Evid.

804(b)(3), so we cannot say that they are too unreliable for use at sentencing when the Federal Rules do not apply. Furthermore, the statements do not stand alone; they are corroborated by police reports and Carroll's own interview with the licensee of the Merrillville store. Finally, there has been no indication nor even an assertion at sentencing or on appeal that the hearsay was in any way inaccurate or misleading. Therefore, it was not plain error to allow Carroll to testify based on this information.

Noble also argues that enhancing his sentence based on three different specific offense elements constituted "impermissible double counting." Noble received sentence enhancements pursuant to U.S.S.G. sec.sec. 2K2.1(b)(1), 2K2.1(b)(4) and 2K2.1(b)(5). This section requires enhancements for intending to steal fifty or more firearms, possessing firearms with stolen serial numbers and using a firearm in connection with another offense, respectively. As the government correctly notes, the Guidelines indicate that enhancements for specific offense characteristics "are cumulative (added together) unless the guideline specifies that only the greater (or greatest) is to be used." U.S.S.G. sec. 1B1.2 application note 4. Nothing in sec. 2K2.1 suggests that only the greatest of the three enhancements should be used, and this court can see no reason why that would be so. The facts supporting each adjustment are not the same, and impermissible double counting exists only when two enhancements are premised on "identical facts." See United States v. Haines, 32 F.3d 290, 293 (7th Cir. 1994). Here the facts relate to Noble's intent to steal a certain number of firearms, possession of (different) firearms that had stolen serial numbers and using a (still different) weapon in connection with the offense. This reflects three different descriptions of different offense conduct, not a different description of the same offense conduct.

III.  Conclusion

For the foregoing reasons, we affirm the upward adjustment of the defendants' sentences for crimes involving fifty or more weapons, but vacate the four-level increase for using a weapon in connection with another felony offense. The cases are remanded to the district court for re-sentencing consistent with this opinion.

/1 Christopher Hicks and James Blanton were indicted with the five appellants and pleaded guilty, but did not appeal their sentences.

/2 The Guidelines grouping rules, see U.S.S.G. sec. 3D1.2, provide additional aid in determining the Sentencing Commission's definition of "another offense." Offenses that have the same harm and victim are supposed to be grouped on the theory that this kind of overlap should not result in double counting for purposes of punishment. See United States v. Dawson, 1 F.3d 457, 461-64 (7th Cir. 1993); United States v. Bruder, 945 F.2d 167, 170-71 (7th Cir. 1991). This implies that an offense that would be grouped (if all were under federal law) cannot be treated as "another offense" with a four-level increase. The state law burglary offense would undoubtedly be grouped under the criteria of sec. 3D1.2, strongly suggesting that it should not be counted as another offense for purposes of sec. 2K2.1.