**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Augustin VALENCIA, Defendant–**
**Appellant.**

**No. 03–1135.**

United States Court of Appeals,
Seventh Circuit.

Argued Aug. 5, 2003.
Decided Sept. 17, 2003.

Stephen A. Kubiatowski, Office of the United States Attorney, Chicago, IL, for Plaintiff–Appellee.

Leonard C. Goodman, Chicago, IL, for Defendant–Appellant.

Before EASTERBROOK, ROVNER, and DIANE P. WOOD, Circuit Judges.

## ORDER

In this appeal, Augustin Valencia challenges the sentence he received after he pleaded guilty to conspiring to distribute cocaine, 21 U.S.C. §§ 846, 841(a)(1), and possessing cocaine with intent to distribute, *id.* § 841(a)(1). He believes that the district court should have found that he was eligible for the "safety valve" exception to the statutory minimum sentence of 60 months' imprisonment. *See* 18 U.S.C. § 3553(f); U.S.S.G. § 5C1.2. Had it done so, Valencia would have received less than the 60–month concurrent sentences the district court imposed. We find no clear error in the district court's determinations, however, and we therefore affirm.

### I

Valencia's entitlement to the safety valve turned on the question whether he truthfully provided to the government all the information he had about the offense. The details of the crime are thus relevant to our assessment of his arguments here. On September 10, 2002, a confidential informant for the Drug Enforcement Administration (DEA) contacted one of Valencia's future co-defendants, Jesus Ramon Lopez–Rocha, and arranged to purchase two kilograms of cocaine the following day in the parking lot of a Chicago restaurant. When the informant and an undercover DEA agent arrived at the parking lot to make the buy, Lopez–Rocha did not have the cocaine but told them that he would contact his "delivery person." Lopez–Rocha then called Valencia. After receiving Lopez–Rocha's call, Valencia arrived by car accompanied by Juan Duran. At Lopez–Rocha's direction, the agent and informant approached Valencia and Duran to inspect the quality of the cocaine. Valencia retrieved a bag of cocaine from a hidden compartment in the car's dashboard and had Duran hand a sample to the

agent. When the agent approved. Valencia told him that someone else would deliver the two kilograms. Valencia then called Jose Jesus Munoz and drove away, leaving Duran behind to wait for Munoz. Shortly thereafter, Munoz arrived and provided the agent with approximately two kilograms of cocaine.

A grand jury indicted Valencia, Munoz, Lopez–Rocha, and Duran on one count of conspiracy to distribute cocaine and one count of possession with intent to distribute cocaine. Valencia pleaded guilty to both counts in November 2002, as did Munoz and Lopez–Rocha. Duran, however, went to trial and a jury found him guilty of both counts on December 12, 2002. The same district judge, Judge Conlon, presided over all four cases.

Meanwhile, Valencia met with government agents to provide information about his offense. During those interviews, Valencia admitted to conspiring to sell the two kilograms of cocaine to the undercover agent in September 2002. He denied any earlier participation in drug deals. He also denied that Duran had any knowing involvement in the September deal. Instead, Valencia said, Duran happened to accompany him that day because "I was supposed to drive him to pay a bill." Duran, however, had told law enforcement agents a different story in a post-arrest interview, stating that he had accompanied Valencia on five or six other drug deals as "security," and that he was paid $75 each time.

In Valencia's presentence report, the probation officer determined that Valencia's offense placed him in a guideline range of 46 to 57 months, which was lower than the statutory minimum of 60 months' incarceration. See U.S.S.G. § 2D1.1; 21 U.S.C. § 841(b). The probation officer also considered the question whether Valencia was eligible for the more lenient treatment afforded by the "safety valve." According to that exception, if the defendant is a first time, nonviolent, low-level drug offender who has made a good-faith effort to cooperate with the government, the court must reduce his base offense level by two and may sentence him below the statutory minimum sentence for his crime. See 18 U.S.C. § 3553(f); U.S.S.G. §§ 2D1.1(b)(6), 5C1.2. But the probation officer concluded that Valencia was ineligible for the safety valve because he failed to satisfy the requirement that he "truthfully provide[ ] to the Government all information and evidence [he] has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan." U.S.S.G. § 5C1.2(5). The government asserted that Valencia was untruthful at two points: (1) when he denied participating in any previous drug transactions; and (2) when he claimed that Duran did not knowingly participate in the September 2002 deal. In support, the government pointed to Duran's post-arrest statement that he provided security for Valencia during five or six previous drug deals.

Valencia submitted no written objections to the PSR, but at his sentencing hearing in January 2003 he objected to the finding that he was ineligible for the safety-valve reduction, arguing that the government had failed to produce any concrete evidence that he was involved in any other drug deals. He did not, however, support his position with any evidence. Valencia himself did not testify at the hearing, nor did his lawyer offer any other evidence that would contradict Duran's statement. For its part, the government noted that codefendant Munoz had also given a proffer that was "consistent with the version of events that played out ... in the trial of Juan Duran" and that was "inconsistent

with Defendant Valencia's version of events."

After hearing argument from both sides, the district court concluded that Valencia had not been truthful about his or Duran's involvement in the cocaine conspiracy. The judge credited Duran's statement, noting that she was familiar with the statement from his trial and that it was against his penal interest:

> I'm personally familiar with Mr. Duran's statement because I tried Mr. Duran and there was an issue about his statement and whether or not it could be used by the government because of his statement when he was arrested. I believe he admitted that he had gone along and provided security for Mr. Valencia on five or six prior drug transactions and he was paid $75 for his services each time. So I find that that is reliable information made at the time of the arrest. Certainly it was against Mr. Duran's penal interest. So I find it quite reliable. So the oral objection to the presentence report declining to decrease the guideline level under Section 5C1.2 is overruled.

The court sentenced Valencia to the statutory minimum term of 60 months' imprisonment on each count to run concurrently, followed by 5 years' supervised release.[1]

## II

■ The sole issue on appeal is whether the district court clearly erred in determining that Valencia failed to meet the safety valve's fifth criterion of complete disclosure and truthfulness. Valencia argues that the court erred in crediting Duran's statement about the other drug deals and discrediting his, without hearing directly from him, Duran, or any other witnesses. This court defers to a sentencing court's credibility determinations, *see United States v. Alvarado*, 326 F.3d 857, 862 (7th Cir.2003), and will not reverse the court's findings unless it is firmly convinced a mistake has been made, *see Anderson v. Bessemer City, N.C.*, 470 U.S. 564, 573, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). Valencia has not shown that the district court was mistaken here.

Valencia's argument on appeal cannot succeed for a very simple reason: he did not properly preserve it. Valencia maintains that the *government* presented no evidence corroborating Duran's statement. But the defendant, and not the government, bears the burden of satisfying the court of his eligibility for the safety valve, including its requirement of complete and honest disclosure. *United States v. Galbraith*, 200 F.3d 1006, 1016 (7th Cir.2000); *United States v. Ramirez*, 94 F.3d 1095, 1101 (7th Cir.1996). A defendant fails to meet this burden if the government challenges the truthfulness, accuracy, or completeness of his statements, and he then produces nothing to persuade the trial court that his disclosures were truthful and complete. *Ramirez*, 94 F.3d at 1101. Valencia presented no evidence contradicting Duran's post-arrest statement and supporting his own. In fact, when the district court raised the issue of Valencia's conflicting statement, his attorney all but conceded that the statement was sufficient to establish his untruthfulness: "We're imposing that objection, anyways. We realize the evidence that is facing us there." Under the circumstances, the district court was entitled to rely upon Duran's post-arrest statement and to find that Valencia had failed to cooperate fully.

1. The judgment of conviction in the record does not correctly reflect the sentences imposed by the district court. At sentencing the court noted that it was imposing two concurrent 60–month terms; the judgment, however, reflects only a single 60–month sentence.

The fact that Duran's statement was hearsay is of no moment, as the Sentencing Guidelines expressly permit the use of hearsay evidence that has "sufficient indicia of reliability to support its probable accuracy." U.S.S.G. § 6A1.3; *see United States v. Szakacs*, 212 F.3d 344, 352 (7th Cir.2000). This court has noted specifically that agents' interviews with witnesses are allowed, *see Szakacs*, 212 F.3d at 352. *See also United States v. Morrison*, 207 F.3d 962, 968 (7th Cir.2000) (absence of testimony of individuals whose statements formed basis of PSR's drug-quantity calculation was not error, where district court possessed sufficiently reliable evidence). Further, statements against penal interest (as Duran's was) are deemed sufficiently reliable for use at sentencing. *See Szakacs*, 212 F.3d at 352–53; Fed.R.Evid. 804(b)(3).

The district judge indicated that one reason she chose to credit Duran's testimony was the fact that a jury, in a case over which she had presided, had already found Duran guilty of both the conspiracy count and the possession count for his involvement in the September 2002 transaction. In his reply brief, Valencia concedes that the "district court could properly rely on the Duran jury verdict in evaluating the statements." Valencia even admits that Duran's conviction "strongly suggests" that his statement that Duran was not knowingly involved was "incorrect." These concessions makes it unnecessary for us to decide here how far a district court may go in drawing inferences from evidence presented at the trial of one defendant when it is conducting a separate sentencing proceeding for a co-defendant who pleaded guilty.

As a final note, the government also argues that Valencia admitted to conspiring with Duran at his plea hearing, because when asked whether he was "in-volved along with Mr. Munoz, Mr. Lopez–Rocha, and Mr. Duran in an arrangement to sell cocaine to somebody who turned out to be a government agent," Valencia answered, "yes." Standing alone, this admission would probably not carry the day. But it does provide additional support for the district court's conclusion that Valencia lied to the government when he subsequently claimed that Duran was not a knowing participant in the conspiracy.

### III

The judgment of the district court is AFFIRMED.