In the

# United States Court of Appeals

### For the Seventh Circuit

Nos. 07-2714 & 07-2715

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JOSEPH J. HILL and
LARRY E. LUMSDEN,

*Defendants-Appellants.*

Appeals from the United States District Court
for the Northern District of Illinois, Western Division
No. 06 CR 50060—**Philip G. Reinhard**, *Judge.*

ARGUED SEPTEMBER 22, 2008—DECIDED APRIL 21, 2009

Before EASTERBROOK, *Chief Judge*, and ROVNER and
WILLIAMS, *Circuit Judges*.

ROVNER, *Circuit Judge*.    Joseph J. Hill and Larry E.
Lumsden both pleaded guilty to a charge that they had
unlawfully possessed firearms as convicted felons, in
violation of 18 U.S.C. § 922(g)(1). Hill was ordered to
serve a prison term of sixty-six months, while his co-
defendant Lumsden was sentenced to a term of seventy-

one months. They both appeal their sentences. Hill contends that the district court improperly denied him an offense-level reduction based on his mitigating role in the offense, *see* U.S.S.G. § 3B1.2, and that the court, in deciding the length of his sentence, improperly referenced what it thought Lumsden's prison term ought to have been rather than what it actually was. Lumsden argues that the court erroneously increased his offense level for possessing firearms in connection with another offense, *see* U.S.S.G. § 2K2.1(b)(6), and that the court's use of the Sentencing Guidelines manual in effect at the time of his sentencing was contrary to the *ex post facto* clause of the Constitution. Because the district court appears to have erroneously believed Hill was ineligible for a mitigating-role reduction due to the fact that he was held accountable only for his own criminal conduct, we vacate his sentence and remand for re-sentencing. We affirm Lumsden's sentence, however.

## I.

On September 2, 2006, Lumsden, together with his brother Charles and his brother's girlfriend, Dee Iku, a/k/a Christine Waller ("Waller"), burglarized the residence of Waller's estranged husband in Durand, Illinois. Among other items, they stole various firearms and ammunition. Hill did not participate in the robbery.

Lumsden subsequently sought to sell the stolen firearms. On the afternoon of September 6, he was visiting the home of another brother, David, and spoke with his brother's girlfriend about the guns. She was or became a

confidential informant ("CI") for the authorities. Lumsden told the CI that he had three "long guns" and one handgun for sale. Lumsden was candid about the fact that the guns had been stolen. The CI told Lumsden that she would get back to him after asking around to see if anyone was interested in the firearms. The CI proceeded to contact the Rockford Police Department ("RPD") to report what Lumsden had told her about the burglary and Lumsden's desire to sell the firearms.

On the following day, September 7, the CI, acting on instructions from members of the federal Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") and the RPD, arranged to make a purchase of firearms from Lumsden. She told him that her uncle was interested in buying some guns. Lumsden subsequently offered to sell her two double-barreled shotguns, a 12-gauge shotgun, and a crate of ammunition for $600. The CI agreed to Lumsden's terms.

Later that afternoon, the CI drove to Lumsden's mobile home to make the purchase. She wore a body recording device to the meeting and was under surveillance while she met with Lumsden. Surveillance agents saw Lumsden carry something wrapped in a blue blanket and place it in the back of the CI's vehicle; Lumsden also placed a large crate in the vehicle. When the CI later met with the authorities, they discovered that the blue blanket concealed three firearms: two Stoeger Arms double-barreled shotguns and a Remington Arms single-barreled shotgun. The crate contained some 298 rounds of assorted shotgun shells. The firearms

purchased by the CI matched the description of three shotguns reported stolen from the residence in Durand, and inside the crate of ammunition was a gun cleaning kit with the name of the burglarized homeowner. The guns and the ammunition all were manufactured outside of Illinois, and they would later form the basis for Count One of the indictment against Lumsden and Hill. The CI told ATF Special Agent Daniel Ivancich that when she arrived at Lumsden's home, Lumsden was not there. Lumsden showed up a few minutes later with Hill. At Lumsden's instruction, the CI retrieved from her vehicle a blanket that she had brought with her to cover the guns. Lumsden led the CI to a back room where the three shotguns and crate of ammunition were laid out on the floor. Hill wrapped the guns in the CI's blanket while the CI paid Lumsden. Lumsden reminded the CI that the guns were "hotter than a piece of bacon in a frying pan." R. 1 Ivancich Aff. ¶ 9.

On September 11, after additional contacts with Lumsden, the CI purchased two additional firearms from him for $500: a Marlin .22 caliber rifle, and a Remington 12 gauge shotgun. As part of the deal, Lumsden also provided the CI with twenty-five rounds of ammunition for each of the guns. Like the guns the CI had procured from Lumsden four days earlier, these two firearms had also been stolen from the Durand residence. They had also been manufactured outside of Illinois. These two firearms and the ammunition would later form the basis for Count Two of the indictment against Hill and Lumsden. When the CI arrived at Lumsden's home to make the purchase, Lumsden took

her into a bedroom where the firearms were laying on a futon beneath a blanket. The CI paid Lumsden in cash, and Lumsden wrapped the guns in the blanket. Hill was present while the CI and Lumsden did business, and he carried the wrapped firearms outside to the CI's vehicle, which was parked in the driveway. Hill knew that the firearms had been stolen. Hill did not profit from the sale. His possession of the firearms did not exceed ten minutes.

Hill and Lumsden were arrested several days later. As convicted felons, both were prohibited from possessing firearms in or affecting commerce, and based on their possession of the weapons and ammunition sold to the CI on September 7 and 11, 2006, they were jointly charged in an indictment with two separate violations of the federal felon-in-possession statute, 18 U.S.C. § 922(g)(1). Lumsden alone was charged in a third count with the possession of another weapon found in his home on the date of his arrest (not a gun that was taken in the burglary). Both defendants ultimately pleaded guilty to Count Two of the indictment, which charged their unlawful possession of the shotguns and ammunition sold to the CI on September 11, 2006.

The district court sentenced Lumsden to a prison term of seventy-one months. In calculating the advisory sentencing range for Lumsden under the Sentencing Guidelines, the district court adjusted his offense level upward by four levels pursuant to Guidelines section 2K2.1(b)(6), finding that Lumsden had possessed the five firearms he sold to the CI in connection with another offense—

namely, the burglary by which he had obtained the fire-arms. The court relied on the November 2006 version of the Sentencing Guidelines when imposing that enhancement, rejecting Lumsden's contention that the Constitution's *ex post facto* clause forbade the court from doing so. R. 65 at 9-10. The 2006 Guidelines also specified a four-level enhancement based on the fact that the gun found in Lumsden's home on the date of his arrest had an obliterated serial number, *see* U.S.S.G. § 2K2.1(b)(4)(A), whereas earlier versions had called for only a two-level enhancement. The final offense level called for a sentence in the range of fifty-seven to seventy-one months. The court considered imposing a sentence above that range in view of Lumsden's relatively extensive and serious criminal history (he had three felony convictions and several misdemeanor convictions). However, the court ultimately rejected that possibility given the increases in Lumsden's offense level triggered by the 2006 Guidelines. R. 65 at 22-23.

The district court imposed a sixty-six month term on Hill. Hill contended that he was entitled to a reduction in his offense role for having played a minor or minimal role in the offense. *See* U.S.S.G. § 3B1.2. Hill's theory was that because he was not involved in the theft of the guns, did not profit from the sale of the guns to the CI, and only briefly possessed the guns when he carried them out to the CI's automobile on September 11, his role in the offense was much less culpable than that of Lumsden and the average participant in unlawful weapons possession. But the district court rejected Hill's request for the reduction. The court reasoned in part that Hill was not

eligible for the reduction because he had not been charged for the theft and sale of the guns, in which he played a lesser role than Lumsden, but rather solely with his own possession of the guns. R. 70 at 12-13. "This is a narrowly tailored offense, and I'm satisfied that . . . he is not eligible for it under all these facts." R. 70 at 13. Alternatively, the court held that even if Hill was eligible for the reduction it was not appropriate in his case, as "he would not be substantially less culpable than the average participant in his possession." R. 70 at 13. The resulting offense level produced an advisory sentencing range of fifty-seven to seventy-one months—the same as Lumsden's. (Hill too had prior convictions for three felonies and "countless misdemeanor offenses." R. 70 at 26.) The court rejected Hill's request for a sentence below that range based essentially on the same facts underlying his (rejected) request for a mitigating-role reduction. "I sense that in your situation it was Lumsden's scheme, and you were there. You're his buddy and you possessed the weapon just to help him out." R. 70 at 27. But given the circumstances of the offense, Hill's criminal history, and the other relevant sentencing factors, *see* 18 U.S.C. § 3553(a), the court concluded that a below-Guidelines sentence was not appropriate. In deciding where within the range to sentence Hill, the court referenced the sentence it had imposed on Lumsden:

> [Y]our co-defendant received 71 months. I almost was going to depart upward and sentence him to 96 months, but I did not, and that was on the basis that he got extra points for the possession of the other weapon. I think there was an obliterated serial number. . . .

And then he got another enhancement [for possession of the firearms in connection with the burglary].

\* \* \*

He would have gotten a 96-month sentence but for the fact that the guidelines had changed since he pled guilty, and I've tried to recognize that . . .

So, in sentencing you within the guideline range, I've compared what I think is appropriate in comparison to your codefendant, who would have received some 90 months. I'm sentencing you to 66 months in the Bureau of Prisons. . . .

R. 70 at 28.

## II.

### A.  Hill

Hill maintains that he was entitled to a reduction in his offense level for the weapons offense based on his minimal or minor role in that offense. Hill's position is that when one looks to the broader conduct of which his possession of the weapons was a part—namely, the theft and subsequent sale of the guns to the CI—his involvement was indeed minor if not minimal: he did not participate in the burglary in which the guns were taken, he did not arrange the sale of the guns to the CI, nor did he profit from the sale. His involvement was limited to wrapping the guns in the blanket (on September 7) and helping to carry them from Lumsden's home to the CI's vehicle outside (on September 11). In calculating Hill's

advisory range under the Sentencing Guidelines, the probation officer did not grant Hill the benefit of a mitigating role reduction. Hill objected to the Pre-Sentence Report ("PSR") on that basis, but as we have noted, the district court overruled the objection, reasoning in part that Hill was not eligible for a reduction in view of the fact he was only being held accountable at sentencing for his own possession of the weapons and alternatively that, even if Hill should be deemed eligible for a reduction, he did not merit one because he was not substantially less culpable than the average participant in the offense.

Section 3B1.2 provides for "a range of [offense-level] adjustments for a defendant who plays a part in committing the offense that makes him substantially less culpable than the average participant." U.S.S.G. § 3B1.2, cmt. (n.3(A)). As logic would suggest, the guideline only applies when there was more than one criminally culpable participant in the offense. *Id.*, cmt. (n.2). The guideline permits a four-level decrease in the defendant's offense level if the defendant was a "minimal participant" in the offense—one who is "plainly among the least culpable of those involved in the conduct of a group," *id.*, cmt. (n.4)—a two-level reduction if he was a "minor participant"—one who "is less culpable than most other participants, but whose role could not be described as minimal," *id.*, cmt. (n.5)—and a three-level reduction if his participation fell somewhere between "minimal" and "minor." The determination whether to grant the defendant credit for his lesser role in the offense requires the court to "weigh[ ] the totality of the circumstances" and is "heavily dependent on the facts of the particular case." *Id.*,

cmt. (n.3(C)). We review the district court's construction of a guideline and its methodology in applying the guideline de novo, as these present legal questions. *See United States v. Wasz*, 450 F.3d 720, 726 (7th Cir. 2006). We review the court's factual findings for clear error. *United States v. Veazey*, 491 F.3d 700, 706 (7th Cir. 2007). And to the extent a particular guideline enhancement or reduction (properly construed and applied) rests on the court's factual assessment, we review the decision to impose or deny the enhancement or reduction for clear error. *United States v. Wagner*, 467 F.3d 1085, 1089 (7th Cir. 2006).

The commentary to the mitigating role guideline was amended in 2001 in a respect that has particular importance in this case. Prior to the amendment, we were of the view that if a defendant, notwithstanding his participation in concerted criminal activity, was sentenced solely for his own criminal conduct and not the conduct of the other participants in the concerted activity, then he was ineligible for a mitigating role reduction. *See, e.g., United States v. Hamzat*, 217 F.3d 494, 497 (7th Cir. 2000). To resolve a division among the circuits on this issue, the Sentencing Commission in 2001 added the following statement to the commentary:

> A defendant who is accountable under 1.3 (Relevant Conduct) only for the conduct in which the defendant personally was involved and who performs a limited function in concerted criminal activity is not precluded from consideration for an adjustment under this guideline. For example, a defendant who is convicted of a drug trafficking offense, whose role in the

> offense was limited to transporting or storing drugs and who is accountable under 1.3 only for the quantity of drugs the defendant personally transported or stored is not precluded from consideration for an adjustment under this guideline.

U.S.S.G. § 3B1.2, cmt. (n.3(A)); *see also id.*, Historical Notes regarding 2001 amendments. We have recognized that the amended commentary effectively overruled our prior cases on this subject. *United States v. Rodriguez-Cardenas*, 362 F.3d 958, 960 (7th Cir. 2004); *see also United States v. Panaigua-Verdugo*, 537 F.3d 722, 725 (7th Cir. 2008).

In view of the amended commentary, the district court committed legal error in deeming Hill ineligible for a mitigating role reduction pursuant to section 3B1.2. Although the district court was aware of the 2001 amendment, it believed there was "no basis" for a reduction given that Hill had pleaded guilty simply to a "narrowly tailored" felon-in-possession charge rather than a broader charge such as the distribution of firearms as to which he played a lesser role than his co-defendant. Sent Tr. 12-13. This reasoning fails to appreciate the change wrought by the amended commentary and largely repeats the very rationale that the Sentencing Commission rejected. Consider that prior to the 2001 amendment, we had repeatedly held that a minor player in a drug trafficking conspiracy who was charged and sentenced only for the amount of drugs that he himself had possessed was not eligible for a mitigating role reduction because he was being held to account only for his own acts and not for the acts of the other conspirators—including the

amounts of drugs they had distributed. *See, e.g., Hamzat*, 217 F.3d at 497 ("This circuit follows the rule that where a defendant is sentenced only for the amount of drugs he handled, he is not entitled to a § 3B1.2 reduction."); *see also United States v. Perez*, 249 F.3d 583, 584 (7th Cir. 2001) (per curiam) (coll. cases). That was precisely the district court's rationale here: because Hill was charged with, convicted of, and sentenced for only his own possession of the firearms, and not the burglary or the sale of those firearms, the court could not credit him for his lesser role in the broader scheme to obtain and distribute the firearms. And this is precisely the view that the Sentencing Commission has rejected. *See* § 3B1.2, cmt., historical notes regarding 2001 amendments ("In contrast to the holding in *United States v. Burnett*, [66 F.3d 137, 140-41 (7th Cir. 1995)], this amendment allows the court to apply traditional analysis on the applicability of a reduction pursuant to § 3B1.2, even in a case in which a defendant is held liable under 1.3 only for conduct (such as drug quantities) in which the defendant was involved personally."). There is nothing unique about the nature of the felon-in-possession offense to which Hill pleaded guilty that alters the analysis. *See id.* ("Although th[e] circuit conflict [resolved by the 2001 amendment] arose in the context of a drug offense, the amendment resolves it in a manner that makes the rule applicable to all types of offenses."). Just as one drug transaction may be part of a broader trafficking operation and may be recognized as such in sentencing, Hill's possession of the guns was one step in a longer sequence of events through which firearms were obtained by burglary and then sold to the

CI.[1] That context cannot be disregarded in assessing his eligibility for a mitigating role reduction. The introductory comments to the role in the offense provisions of the Guidelines could not be more clear on this point: "The determination of a defendant's role in the offense is to be made on the basis of all conduct within the scope of §1B1.3 (Relevant Conduct), i.e., all conduct included under §1B1.3(a)(1)-(4), and not solely on the basis of elements and acts cited in the count of conviction." U.S.S.G. Chapter Three, Part B, intro. cmt.; *see United States v. Anderson*, 259 F.3d 853, 864 n.9 (7th Cir. 2001) (citing *United States v. Ramsey*, 237 F.3d 853, 861-62 (7th Cir. 2001)). In short, Hill's offense of conviction should not be treated as an isolated act in which only he was involved, but rather one step in a broader criminal scheme that involved multiple participants. Hill is eligible for a section 3B1.2 reduction.

Although the district court went on to summarily state that Hill "was not substantially less culpable than the average participant in his possession," which is a factual determination normally entitled to deferential review, we cannot be confident that its analysis was guided by the appropriate factors. We do agree that in addition to assessing a defendant's role in a particular crime, a court must consider whether he is significantly

---

[1] That sequence distinguishes this case from *United States v. Thompson*, 990 F.2d 301, 303-04 (7th Cir. 1993), in which, so far as the reported facts reveal, the defendant simply possessed the gun (alone or perhaps jointly with his girlfriend) without doing so in furtherance of a broader criminal scheme.

less culpable than the average participant in the offense. *See United States v. McGee*, 408 F.3d 966, 987 (7th Cir. 2005). In other words, just because a particular defendant may have been less culpable than the leader of concerted criminal activity does not mean that he qualifies as a minor or minimal participant. *Id.*; *see also United States v. Gallardo*, 497 F.3d 727, 741 (7th Cir. 2007), *cert. denied*, 129 S. Ct. 288 (2008). But the court's approach to that question here reflects an inclination to divorce the offense of conviction from the surrounding facts, and once that is done to treat Hill's possession of a gun as no different (and no less culpable) than anyone else's possession. But there are any number of ways in which a firearm may be possessed and any number of purposes for which it may be possessed, and although these may have no bearing on a felon's criminal liability for the possession (one either possesses a gun or one does not), they do reflect on the gravity of the offense. Consider a felon who is shown a gun while visiting the home of a friend and takes it into his hands to admire it for a moment, and compare that felon to one who keeps a gun in his own home and one day points it at a police officer who arrives to execute a search warrant. The former is just as guilty of violating section 922(g)(1) as the latter, notwithstanding his transitory possession of the gun. *See United States v. Matthews*, 520 F.3d 806 (7th Cir. 2008). Yet one would not expect that their acts of possession would necessarily be treated as equivalent for sentencing purposes. Just as the second felon's malevolent use of the gun against the police officer would be treated as an aggravating factor at sentencing, *see United States v. Purifoy*, 326 F.3d 879, 880-81 (7th Cir. 2003),

the first felon's momentary possession absent an intent to use the gun for malevolent purposes might be considered a mitigating factor in the wake of *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738 (2005), *see* 18 U.S.C. § 3553(a)(1) and (a)(2)(A); *United States v. Williams*, 403 F.3d 1188, 1198-1200 (10th Cir. 2005); *cf. United States v. Sura*, 511 F.3d 654, 664 (7th Cir. 2007) (sentencing judge can consider circumstances that make possession of firearm more ominous than the guidelines might otherwise recognize).

We find ourselves making the same point vis-à-vis Hill's entitlement to the 3B1.2 reduction that we have already made in discussing his eligibility for the reduction: The facts underlying his possession of the guns matter. So far as the record reveals, his involvement with the guns was limited to a few discrete acts occupying no more than a few minutes on each of two occasions. On the first, he wrapped the guns in a blanket, and on the second, he carried the guns to the CI's car. He did not participate in the theft of the guns. He did not participate in arranging the sale of the guns to the CI, and he did not profit from the sale of the guns to the CI. *Cf. United States v. Emerson*, 501 F.3d 804, 816 (7th Cir. 2007) (mitigating role reduction properly denied to participant in conspiracy to possess cocaine via robbery, where although defendant did not participate in robbery of drug shipment, he was prepared to do so if needed and stood to profit from it). His actions did further the distribution of the stolen guns, *see United States v. Sorich*, 523 F.3d 702, 717 (7th Cir. 2008) (finding mitigating role reduction properly denied where although defendant played a lesser role than co-defendant, he nonetheless

performed a function essential to success of scheme), *cert. denied*, 129 S. Ct. 1308, but reasonable minds could differ as to the importance of his brief involvement. *See United States v. Hunte*, 196 F.3d 687, 694-95 (7th Cir. 1999) (defendant a minor if not minimal participant in marijuana conspiracy where although she registered for motel room where conspirators rested, helped roll a joint for sampling, closed window blinds to conceal her co-conspirator's activities, and drove one of vehicles used to transport conspirators, she did not handle drugs, was not involved in negotiations, and did not stand to profit from her involvement). Hill performed tasks that had to be done, but his involvement was by no means essential to the success of the scheme (the guns could just as easily have been wrapped and carried to the CI's car by either Lumsden or the CI), and his contributions appear to have been incidental.

Our point is thus not that Hill necessarily is entitled to credit for being a minor or minimal participant in the offense but rather that he is entitled to have the district court reconsider the matter. We shall remand the case to the district court for that purpose.

Because we are remanding the case for reconsideration of a possible reduction based on Hill's role in the offense, we call the district court's attention to one other point. When addressing the appropriate length of sentence for Hill, the district court referenced his co-defendant Lumsden, and the court's remarks could be read to suggest that Hill's sentence should be calculated in part based not on the actual sentence that Lumsden received,

but the longer sentence that the court considered imposing on Lumsden but did not. We are not certain from the court's remarks whether the court, in the end, used Lumsden's actual sentence or a hypothetically longer sentence as its benchmark. It may be, as the government suggests, that what the court was saying was that it had considered sentencing Lumsden to a prison term above the advisory Guidelines range but ultimately did not, and for that reason it would not sentence Hill above the Guidelines range either. (The court previously had signaled that it was considering an above-Guidelines sentence for Hill as well.) But we cannot be sure that this is what the court meant. Referencing the longer sentence that the court did not, in the end, impose on Lumsden would be problematic, given that the principal reason cited by the court for a longer sentence was Lumsden's criminal history, which had nothing to do with Hill and his own culpability. We invite the court to revisit and clarify its reasoning in this regard on remand.

B.   Lumsden

In calculating Lumsden's offense level, the district court applied a four-level enhancement pursuant to Guidelines section 2K2.1(b)(6), which mandates such an increase "[i]f the defendant . . . possessed any firearm . . . in connection with another felony offense . . . ." Effective November 1, 2006, the commentary to this guideline was amended to state the following in regard to the meaning of the phrase "in connection with":

14.  "In Connection With"—

(A) In General. Subsection [ ] (b)(6) . . . appl[ies] if the firearm or ammunition facilitated, or had the potential of facilitating, another felony offense. . . .

(B) Application When Other Offense is Burglary or Drug Offense. Subsection [ ] (b)(6) . . . appli[ies] (i) in a case in which a defendant, . . . during the course of a burglary, finds and takes a firearm, even if that defendant did not engage in any other conduct with that firearm during the course of the burglary . . . .

\* \* \*

US.S.G. § 2K2.1, comment. (n.14). There is no dispute the increase to Lumsden's offense level was required by Application Note 14(b)(i): Lumsden took in a burglary the firearms he was convicted of possessing. But Lumsden argues that the amended commentary is inconsistent with the language of the guideline. He also contends that because the amended commentary took effect after his crime, the district court's reliance on that commentary in calculating his sentencing range violated the Constitution's *ex post facto* clause. Neither argument has merit.

"[C]ommentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." *Stinson v. United States*, 508 U.S. 36, 38, 113 S. Ct. 1913, 1915 (1993). Application Note 14(B)(i) is consistent with the language of Guideline 2K2.1(b)(6).

Lumsden's contention is that Note 14(b)(i) disregards the guideline's requirement that the defendant possess a firearm in connection with "*another*" felony offense, that is, an offense distinct from the weapons offense itself. As Lumsden points out, we held in *United States v. Szakacs*, 212 F.3d 344, 349-52 (7th Cir. 2000), that the 2K2.1(b)(6) enhancement was improperly applied to defendants convicted of the federal offense of conspiring to steal firearms from a licensed dealer. The district court had imposed the enhancement on the theory that the stolen weapons had been possessed in connection with the state-law offense of conspiracy to commit burglary. We reasoned that because there was no separation either in time or in conduct between the state and federal offenses, it was not possible to say that the weapons had been used to commit an offense apart from the offense of conviction. *Id.* Taking his cue from *Szakacs*, Lumsden posits that because he took possession of the firearms as a result of the burglary, his possession cannot be divorced from that offense; in other words, the burglary was not "another" offense but one of which his possession of the guns was part and parcel. "[T]he language of the Guide-line does not allow the enhancement when the other offense is not a separate offense but the very act of illegally obtaining possession of the guns." Lumsden Br. 16.

But as our decision in *United States v. Purifoy*, *supra*, 326 F.3d at 880-81, reveals, the relevant question is not whether the two offenses occur simultaneously or have some causal relationship with one another, but whether they are based on the same conduct. *Purifoy* sustained the enhancement for a defendant who, like Lumsden, was

convicted of being a felon in possession; the enhancement was based on the fact that the defendant had committed the additional offense of aggravated assault by pointing the gun at a police officer. The fact that the two offenses occurred at the same time was immaterial, in our view. "[Purifoy's] offense of conviction, because he was a felon, involved mere possession of a firearm. When he pointed his gun at the arresting officers, he committed an aggravated assault—he was actually *using* the weapon." *Id.* at 881 (emphasis in original).

As in *Purifoy*, the enhancement in this case was based on conduct that was distinct from Lumsden's simple possession of the firearms, namely the burglary. We understand Lumsden's point that he could not have possessed these particular guns without committing the burglary. But that does not render the two offenses one and the same for sentencing purposes. The offenses are based on separate conduct, and the fact that Lumsden committed one of the crimes did not mean that he necessarily had to commit the other: He could have burglarized the residence without taking possession of the guns, and he could have possessed a gun (even these guns, if he came by them a different way) without committing a burglary. The district court therefore properly treated the crimes as distinct for purposes of the 2K2.1(b)(6) enhancement.

We note finally that the guideline does not require Lumsden to have possessed the weapons for the purpose of committing the burglary. The guideline by its terms requires only that the defendant have possessed a

weapon "in connection with" another offense. That language is sufficiently broad to include possessing a weapon as a result of the burglary, *see United States v. Armstead*, 114 F.3d 504, 511-12 (5th Cir. 1997), and thus to accommodate the interpretation reflected in the commentary.

Lumsden goes on to argue that it was a violation of his rights under the *ex post facto* clause of the Constitution for the district court to use the 2006 Guidelines Manual which included the amended commentary in sentencing him, given that his offense took place two months prior to the November 1, 2006 effective date of the new commentary. Lumsden assumes that absent the new commentary, he would not have received the enhancement. That is not a given. The Fifth Circuit had previously interpreted the guideline language to apply to the unlawful possession of weapons that were taken in a burglary, *see Armstead*, 114 F.3d at 512-13, and we had indicated in *Szakacs* that "we d[id] not necessarily disagree with" that aspect of the Fifth Circuit's analysis, 212 F.3d at 349 (although we did disagree with *Armstead* in another respect, *id.* at 349-52).

But even giving Lumsden the benefit of the doubt on this point, our decision in *United States v. Demaree*, 459 F.3d 791, 795 (7th Cir. 2006), *cert. denied*, 127 S. Ct. 3055 (2007), forecloses his argument, as Lumsden himself recognizes. *Demaree* held that in view of the advisory nature of the Guidelines following the Supreme Court's decision in *United States v. Booker*, *supra*, 543 U.S. 220, 125 S. Ct. 738, there is no *ex post facto* problem posed by

applying the version of the Guidelines in effect at the time of the defendant's sentencing, even if that version incorporates disadvantageous revisions that took effect after the defendant committed his offense.

### III.

The district court erred in deeming Hill ineligible for a possible reduction in his offense level based on his minimal or minor role in the offense. We therefore VACATE Hill's sentence and REMAND for reconsideration of his entitlement to such a reduction and also clarification as to the manner in which the court took into account his co-defendant's sentence. The court properly enhanced Lumsden's offense level based on his possession of a weapon in connection with another offense. We therefore AFFIRM his sentence.