In the

# United States Court of Appeals

## For the Seventh Circuit

No. 13-1401

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

HAKEEM L. SMITH,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of Illinois.
No. 12-CR-30173—**David R. Herndon**, *Chief Judge.*

ARGUED JUNE 13, 2013—DECIDED JULY 15, 2013

Before MANION, SYKES, and TINDER, *Circuit Judges.*

PER CURIAM. Hakeem Smith pleaded guilty to distri-
buting, and possessing with intent to distribute, crack
cocaine. *See* 21 U.S.C. § 841(a)(1). The district court sen-
tenced Smith as a career offender, *see* U.S.S.G. § 4B1.1, to
151 months' imprisonment, the bottom of the guidelines
range. On appeal Smith offers two reasons that he has
rebutted the presumption that his within-guidelines
sentence is reasonable: First, the Sentencing Commission

did not develop the career-offender guidelines using its standard empirical approach; rather it followed congressional mandate. Second, the nature of his offense and his personal characteristics make the sentence substantively unreasonable. Because a congressionally mandated guideline is entitled to a presumption of reasonableness, and because the sentence is otherwise reasonable, we affirm the judgment of the district court.

**Background**

The facts of Smith's crimes are straightforward. In April 2012, police officers stopped a car in which Smith, then 22 years old, was a passenger. Smith fled on foot, but when police captured him, they found him with a clear plastic bag containing 9.9 grams of crack. About two weeks later, Smith sold $60 worth of crack (0.3 grams) to a confidential police source in a hand-to-hand transaction. He pleaded guilty to distribution and possession with intent to distribute crack.

Given the amount of crack attributed to him (10.2 grams), Smith's base offense level would have been 18, *see* U.S.S.G. § 2D1.1(c)(11), and his prior convictions would have placed him in criminal history category III. But Smith's two prior convictions for aggravated fleeing from police (a felony), *see* 625 ILCS § 5/11-204.1, qualified as crimes of violence, *see* U.S.S.G. § 4B1.2(a); *Welch v. United States*, 604 F.3d 408, 425 (7th Cir. 2010); *United States v. Spells*, 537 F.3d 743, 754 (7th Cir. 2008), and because in this case he pleaded guilty to controlled substance offenses, *see* U.S.S.G. § 4B1.2(b), the probation

officer classified him as a career offender. This classification resulted (after a three-level reduction for acceptance of responsibility, *see id.* § 3E1.1(a), (b)) in a total offense level of 29 and a category VI criminal history. *See id.* at § 4B1.1(a), (b). Smith's guidelines range as a career offender was 151 to 188 months (as opposed to the range of 24 to 30 months that would have applied without the career-offender label).

Smith did not object to the probation officer's guidelines calculations, but he argued for a below-guidelines sentence of 60 months' imprisonment. He criticized the career-offender guidelines because they were not produced through the Sentencing Commission's traditional empirical method, and he also argued that his guidelines range "greatly overstates the seriousness of . . . [his] instant drug offense and predicate fleeing offenses" because his current offense involved only small quantities of drugs and his predicate offenses did not involve the use of a weapon or the type of deliberate violence of the crimes enumerated in U.S.S.G. § 4B1.2(a). He also contended that his "personal history and characteristics support a below guidelines sentence." He pointed specifically to his youth, troubled childhood, and history of mental illness (including his diagnoses of depression, bipolar disorder, and "oppositional defiant disorder").

The district court adopted the findings and guidelines calculations from the presentence report and ultimately sentenced Smith to 151 months' imprisonment. The court explained that, contrary to Smith's arguments that

he was not a dangerous criminal, at age 22 he already had been convicted of drug offenses and a domestic battery in which he choked a woman and kicked her in the head. These were serious offenses that, even though he did not use a weapon, still threatened family and community. His criminal history also demonstrated a pattern of twice attempting to escape and elude police, both by car, which put the public at "extraordinary risk" and, in this case, on foot, showing disrespect for the law. In addition, the court observed that, although Smith experienced mental health issues that may have diminished his capacity, he refuses to take prescribed medication and generally disdains authority. Therefore, the court concluded, a within-guidelines sentence was necessary to, among other things, protect the public and promote respect for the law.

## Analysis

On appeal Smith challenges the substantive reasonableness of his sentence. Because Smith's sentence is within the guidelines range, we apply a presumption of reasonableness. *See Rita v. United States*, 551 U.S. 338, 347 (2007); *United States v. Baker*, 655 F.3d 677, 683 (7th Cir. 2011). But Smith first contends that this presumption is rebutted because the career-offender guidelines were developed, not by using the Sentencing Commission's traditional empirical approach (including the study of thousands of presentence reports), but by congressional mandate in 18 U.S.C. § 994(h). Smith points out that the court in *Rita* allowed a presumption of rea-

sonableness because, when the Commission uses its empirical approach, "it is fair to assume that the Guidelines, insofar as practicable, reflect a rough approximation of a sentence that might achieve 18 U.S.C § 3553(a)'s objectives." 551 U.S. at 350. Thus, Smith asserts, "the absence of such an empirical basis for a particular guideline results in the absence of the inference that it produces" a reasonable sentence.

We have not yet addressed Smith's argument that, because the career-offender guideline is not empirically based, *Rita's* deference to the Commission's judgment does not apply and, therefore, no presumption of reasonableness arises. But in the context of the child-pornography guidelines, we have rejected the similar argument that the presumption vanishes if the guideline is not based on empirical research. *See, e.g., United States v. Schuster*, 706 F.3d 800, 808-09 (7th Cir. 2013); *United States v. Reibel*, 688 F.3d 868, 870-71 (7th Cir. 2012). Other circuits have, however, considered Smith's specific argument about the rationale of *Rita*. They have concluded that the presumption applies even to sentences based on guidelines developed through congressional mandates because a sentence that agrees with the judgment of Congress is likely reasonable as well. *See United States v. Coleman*, 635 F.3d 380, 382 (8th Cir. 2011); *United States v. Kiderlen*, 569 F.3d 358, 369 (8th Cir. 2009); *United States v. Mondragon-Santiago*, 564 F.3d 357, 366-67 (5th Cir. 2009); *United States v. Kirchhof*, 505 F.3d 409, 414 (6th Cir. 2007). The Fourth and Tenth Circuits have reached the same conclusion, albeit only in nonprecedential dispositions. *See, e.g., United States v.*

*Carrera-Diaz*, No 12-2098, 2013 WL 518527 at \*2 (10th Cir. Feb. 13, 2013); *United States v. v. Mendoza-Mendoza*, 413 F.App'x 600, 602 (4th Cir. 2011).

We follow the course laid out by our sister circuits. Smith does not explain why this court should accord less deference to a guideline based on Congress's judgment concerning the statutory maximums and the definition of violent felonies—to which the career-offender guidelines and their definition of crimes of violence are tied—rather than the Commission's own studies. Absent a strong reason to reject congressional judgments about sentencing, courts traditionally respect them as valid. *See Schuster*, 706 F.3d at 808 (noting when rejecting a reasonableness challenge to a child-pornography-guideline sentence that "Congress itself may have studied the problem of child pornography"); *Kiderlen*, 569 F.3d at 369 ("in the real-world circumstance where a sentencing judge agrees with Congress, then the resulting sentence is also probably within the range of reasonableness"); *Kirchhof*, 505 F.3d at 414 (reasoning that, though a guideline may not "reflect the expertise of the Sentencing Commission," an argument challenging the presumption on that basis "fails to recognize that it is the prerogative of Congress to fix the sentence for a federal crime" and "it is not the court's role to second-guess the legislative determination of appropriate sentences").

Finally, the Sentencing Commission did, in fact, lend its expertise to developing the career-offender guidelines. Although the Commission tied the career-

offender guidelines to the statutory maximums for drug and violent crimes as Congress directed in § 944(h), it also conducted research and amended those guidelines "to focus more precisely on the class of recidivist offenders for whom a lengthy term of imprisonment is appropriate." U.S.S.G. § 4B1.1 background; *see also James v. United States*, 550 U.S. 192, 206 (2007) (Commission's decision to include attempt offenses as crimes of violence "was based on the Commission's review of empirical sentencing data and presumably reflects an assessment that attempt crimes often pose a similar risk of injury as completed offenses"). Accordingly, the way in which the Commission developed the career-offender guidelines does not rebut a presumption on appeal that a within-guideline sentence is reasonable.

Smith argues alternatively that the presumption that his within-guidelines sentence is reasonable is rebutted by the specific nature of his offense and character. As he did in the district court, he cites his youth and immaturity, his history of mental illness (including his diagnoses of depression, bipolar disorder, and oppositional defiant disorder), and his prior convictions involving no "deliberate violence."

The district court weighed these arguments when considering the 18 U.S.C. § 3553(a) factors and did so reasonably. Even if it assigned more weight than Smith prefers to the need to protect the public from Smith's propensities for violence and impulsive behavior, and less weight to his mental health problems

and youth, the district court enjoys discretion in assigning those weights. *See United States v. Coopman*, 602 F.3d 814, 818-19 (7th Cir. 2010); *United States v. Beier*, 490 F.3d 572, 574 (7th Cir. 2007). True, the weighting of the § 3553(a) factors must fall "within the bounds of reason," but those bounds "are wide," *United States v. Busara*, 551 F.3d 669, 674 (7th Cir. 2008) (internal citation and quotation marks omitted). Smith's criminal record in his young life stretches over almost 10 years and is varied, violent, and puts the public at serious risk. Such behavior does not display personal circumstances that place his offense outside the heartland of cases warranting the admittedly harsh penalties associated with drug offenses and the career-offender classification. *Cf. United States v. Freeman*, 691 F.3d 893, 902-03 (7th Cir. 2012) (30-year, within-guidelines sentence reasonable despite defendant's argument that he was only a "'small time, small quantity' dealer"); *United States v. Curtis*, 645 F.3d 937, 943 (7th Cir. 2011) (defendant's within-guidelines sentence of 262 months reasonable even though he was a low-level distributor given his history of run-ins with the law dating back to the age of 12); *United States v. Jackson*, 547 F.3d 786, 794-96 (7th Cir. 2008) (above-guidelines sentence reasonable even though defendant was only 25 in part because of defendant's extensive criminal history and failure to reform himself).

AFFIRMED.