In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

No. 20-1659

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ANTHONY BARRERA,

*Defendant-Appellant.*

———————————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:19-CR-00439(1) — **Robert W. Gettleman**, *Judge.*

———————————

ARGUED DECEMBER 15, 2020 — DECIDED DECEMBER 29, 2020

———————————

Before KANNE, HAMILTON, and BRENNAN, *Circuit Judges.*

PER CURIAM. Anthony Barrera sold a handgun to a fellow gang member who turned out to be a confidential informant. Barrera pleaded guilty to unlawful possession of a firearm, 18 U.S.C. § 922(g)(1), and was sentenced to 110 months' imprisonment—a term at the bottom of his guideline range. Critical to Barrera's sentence was his post-arrest conduct, which included publicizing the informant's identity on social media. Barrera, who has cancer, appeals his sentence as

unreasonable. But the district court adequately explained the sentence in light of the 18 U.S.C. § 3553(a) factors, so we affirm.

## I. Background

Barrera and a fellow member of the Latin Kings met to sell a handgun to another gang member. Unbeknownst to Barrera, the buyer was a government informant wearing a wire. The informant recorded the sale, during which Barrera repeatedly handled the gun, told the buyer that he already had test-fired it, and showed off holes in a door from bullets shot from the gun.

Barrera, who had prior felonies, was indicted for unlawful possession of a firearm. 18 U.S.C. § 922(g)(1). During discovery, the government produced the informant's video and moved for a protective order—an order barring Barrera from disclosing any discovery, including the video, to anyone outside the defense, given the risks that the video's dissemination posed to further law-enforcement efforts and the informant's safety. The court granted the motion.

Despite the protective order, Barrera—while released on bond—posted several clips of the video (including one that was 59-seconds long) to the social media site Snapchat. He named the informant in captions, proposed a "watch party" of the video, and sent the posts to fellow Latin Kings.

The government moved to revoke Barrera's pretrial release based on his dissemination of the video, an act that violated the protective order and his release conditions. The defense countered by emphasizing Barrera's medical circumstances—he suffered from skin and lung cancer, as well as a recent stroke, and the adequacy of the medical care

he would receive in custody was uncertain. The defense also relayed Barrera's intent to plead guilty.

The court held a change-of-plea hearing the next day. It first questioned a representative from the correctional center about the facility's capacity to handle Barrera's medical issues; the facility assured the court that it could. The court proceeded to conduct a Rule 11 colloquy during which it advised Barrera of the potential guideline range and explained that the range was only advisory. It then accepted his guilty plea and, given the facility's assurances that it could care for Barrera's medical conditions, revoked his release pending sentencing. Concerned about Barrera's health, the court further ordered that the prison report back the following week about how it planned to treat him.

The parties then debated an appropriate sentence for Barrera. The government recommended a within-guideline sentence, emphasizing his extensive criminal history, his efforts to sell the gun to a fellow gang member, and the danger he posed to the informant by sharing the confidential videos. (According to the rules governing the Latin Kings, retaliation—including murder—is warranted against members who become informants, but only when there is irrefutable documentation like the video that Barrera published.) Arguing in mitigation, the defense highlighted Barrera's tough upbringing, drug addiction, poor health, and acceptance of responsibility for his crimes.

The district court imposed a prison term of 110 months, the bottom of Barrera's 110 to 120 months guideline range. A felon-in-possession charge, the court noted, often results in a five-year sentence or less, depending on mitigating circumstances, but Barrera's post-arrest conduct (violating the pro-

tective order and identifying the informant) was "so serious
and so alarming and so dangerous" that he could not be giv-
en a break from the guideline range, which in this case was
"reasonable and appropriate." As for Barrera's underlying
conduct of handling a gun while trying to sell it, the court
opined that trafficking guns to gang members leads to an
oversaturation of guns in the community and often to the
deaths and injuries of innocents. The court also lamented
that Barrera's cancer had not been treated more aggressively
and recommended placement at a medical center where he
could receive proper care.

## II. ANALYSIS

Barrera appeals his sentence, first making a bare-bones
argument that the court erred by treating the guideline as
per se reasonable, without considering that it could stray
from that range. But the court did not regard itself as bound
by the guideline. At the change-of-plea hearing, it
unequivocally stated that the range was advisory and that it
could impose any sentence, including one below the range
or up to the 10-year maximum sentence. And at sentencing,
it reiterated the guidelines' advisory nature, opining that a
felon-in-possession crime normally warrants a five-year
sentence or less—implying that a *below*-guideline sentence is
often reasonable—but here Barrera's post-arrest conduct
demanded a different result.

Next, Barrera argues that his 110-month sentence was
unreasonable because the court failed to justify it in light of
all the § 3553(a) factors. He acknowledges that the court ad-
dressed the nature of the offense and his own history and
characteristics, 18 U.S.C. § 3553(a)(1), but maintains that the
court failed to consider the factors of deterrence,

*id.* § 3553(a)(2)(B), and the need to protect the public, *id.* § 3553(a)(2)(C)—both of which would be affected by his poor health and cancer diagnosis.

True, the court did not elaborate on every factor under 18 U.S.C. § 3553(a), but it was not required to; it is sufficient to briefly explain those factors that it considered most relevant. *See United States v. Smith*, 721 F.3d 904, 908 (7th Cir. 2013) (affirming sentence as reasonable where court placed significant weight on one § 3553(a) factor). The court adequately did so here: It justified Barrera's sentence based on the nature of his offense and the seriousness of his conduct— selling a gun to a gang-member, violating the court's protective order, and outing the informant. *See* 18 U.S.C. § 3553(a)(1), (2)(A). And contrary to Barrera's suggestion, the court elaborated beyond those two factors, contemplating Barrera's characteristics (his need for placement at a medical facility), *id.* § 3553(a)(1); the need to protect the public from the gun-trafficking crimes, *id.* § 3553(a)(2)(C); and the kinds of sentences normally imposed for possession crimes (and why the typical five-year sentence was inappropriate here), *id.* § 3553(a)(3). That the court did not address Barrera's illnesses in light of the need for deterrence or protecting the public is irrelevant, given that he never raised those arguments in the district court. *See United States v. Jackson*, 547 F.3d 786, 795 (7th Cir. 2008) (affirming sentence as reasonable where court considered only fully developed arguments in mitigation).

Barrera next argues that his sentence was unreasonable because the district court based it on unsupported facts and inferences. He points, for instance, to the court's statement about his role in *selling* the handgun—a statement he calls

"inappropriate" because he pleaded guilty only to *possessing* the gun. But sentencing courts may consider, besides the crime pleaded guilty to, the circumstances of the offense. 18 U.S.C. § 3553(a)(1). And in an unlawful-possession charge, those circumstances include the specific context in which a defendant possessed the gun. *See United States v. Hill*, 563 F.3d 572, 579 (7th Cir. 2009) (contrasting, for sentencing purposes, felon who momentarily holds a friend's gun to admire it, with one who keeps gun at home and one day points it at a police officer). So we see no error in the court's consideration that Barrera not only held the gun but tried to sell it under the table to a fellow gang member—facts that Barrera admitted in his written plea, at his change-of-plea hearing, and at sentencing.

As a second example of unsupported inferences, Barrera spotlights the court's statements about "this type of trafficking" that leads to guns "all over the place," often "fired indiscriminately" and wounding or killing children and innocent people. These comments about the larger consequences of illegal firearm trafficking, especially among gang members, were relevant in assessing the nature and circumstances of Barerra's offense and the need to protect the public and deter unlawful conduct—all of which are factors listed in § 3553(a). The judge's comments were thus an important part of his explanation for imposing a guideline sentence (as opposed to granting Barrera's request for a lower sentence), and they offer no basis for setting that sentence aside.

AFFIRMED