In the

# United States Court of Appeals

## For the Seventh Circuit

No. 18-3169

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

GREGORY M. TERRONEZ,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 18-cr-40005 — **James E. Shadid**, *Judge.*

ARGUED MAY 30, 2019 — DECIDED JUNE 7, 2019

Before FLAUM, MANION, and BARRETT, *Circuit Judges.*

FLAUM, *Circuit Judge.* Gregory Terronez pleaded guilty to unlawful possession of a firearm by a felon. The district court announced a within-Guidelines sentence of 110 months' imprisonment. On appeal, Terronez argues the court committed procedural error by not considering his request for a variance from the Guidelines range given that the base offense level overrepresented the seriousness of his offense. For the reasons below, we affirm.

**I. Background**

On November 29, 2017, while police were on vehicle patrol in Rock Island, Illinois, they maneuvered behind a white Chevrolet Impala and observed the car accelerate and come to an abrupt stop. Then, police saw Terronez exit the car and run through a residential neighborhood. After a foot chase, Terronez surrendered to the police. He told the officers he ran because he believed he had an outstanding arrest warrant. The police recovered a firearm, and Terronez confessed to police that he threw the gun while running. A one-count indictment charged Terronez with unlawful possession of a firearm as a felon in violation of 18 U.S.C. § 922(g)(1). On May 16, 2018, Terronez indicated his intent to plead guilty, and on June 4, the district court accepted the plea.

The United States Probation Office filed a Presentence Investigation Report ("PSR") that calculated Terronez's Sentencing Guidelines range. Since Terronez had two Illinois drug trafficking convictions, each of which subjected him to over a year in prison, his violation of § 922(g) was "subsequent to sustaining at least two felony convictions of … a controlled substance offense," and as a result, his base offense level was 24. U.S.S.G. § 2K2.1(a)(2); *see id.* § 4B1.2(b) (defining "controlled substance offense" as a drug trafficking offense "punishable by imprisonment for a term exceeding one year"). The PSR also suggested a four-level enhancement because the firearm had an "obliterated serial number," *id.* § 2K2.1(b)(4)(B), and a three-level reduction because Terronez accepted responsibility, *id.* § 3E1.1. As such, the total offense level was 25.

Terronez's criminal history category was VI because he received criminal history points for the two prior drug trafficking convictions, as well as two drug possession convictions, an aggravated assault conviction, and two driving on a suspended license convictions. Combining a total offense level of 25 and a criminal history category of VI, while accounting for § 922(g)'s ten-year statutory maximum, the Guidelines recommended a 110- to 120-month term of imprisonment. Terronez did not object to the PSR's Guidelines calculation, but he filed a sentencing memorandum seeking a below-Guidelines sentence.

On September 26, 2018, the court held a sentencing hearing. The government asked for a within-Guidelines sentence, noting Terronez resumed selling drugs upon release from prison in May 2017 and had a lengthy criminal history, a history of substance abuse, and self-reported anger issues. It also highlighted the inherent danger posed by a drug dealer possessing a firearm. Terronez requested an 84-month sentence. As relevant here, he argued that "all prior controlled substance offenses are not equal even though they are treated equally by the sentencing guidelines." He emphasized he had no "record of violence or a record of using firearms," and his prior drug offenses were "medium-level" and "did not concern any use of a weapon or any violence." Therefore, he asserted "his history and characteristics show that … [he] is not a threat with a weapon that perhaps a typical … person with two prior controlled substances offenses would be."

The court adopted the PSR Guidelines calculation and indicated it would base its sentence on the Guidelines recommendation, the parties' sentencing memoranda, the parties' arguments at the hearing, and the 18 U.S.C. § 3553(a) factors.

The court then explained its concern that Terronez's possession of a firearm, given his prior drug convictions, was dangerous: "The mixture of drugs[,] … even the smaller amounts as your Rock Island cases seem to be, [and] possessing … guns is a danger to you, others in the drug trade, and … the public …." The court also acknowledged, but found unavailing, Terronez's argument that he deserved a lower sentence due to his lack of a violent past:

> I recognize that you have a limited history of violence … and I'm not even considering whether you do or not, to tell you the truth. And I realize that you said to me that you're not a violent person, and I don't have any reason to doubt that except there is really only one reason to possess that firearm in the trade of either small drug dealing or large drug dealing. And that is at some point you're going to use it, whether you believe you're protecting yourself or whether you are embroiled in some kind of dispute.

Terronez interrupted, stating "I would never use that firearm." The court responded:

> There is just no basis for possessing it if you weren't going to use it. You are prohibited from using it for starters. And from my review of your history, that's the reasonable inference to be drawn…. I appreciate the request of 84 months by [defense counsel], and I don't consider that to be a request that is out of line … and that may be justified in some gun cases but all gun cases aren't the same.

Then, the court issued the sentence:

> I think under the circumstances, when all 3553
> characteristics are evaluated: the nature and cir-
> cumstances of the offense; the history and char-
> acteristics of you; the need for the sentence to
> reflect the seriousness of the offense; promote
> respect for the law; provide just punishment; af-
> ford adequate deterrence to criminal conduct,
> which applies in your case; and to protect the
> public from further crimes, which also apply in
> your case; all of them apply to your case; as well
> as providing you with educational and voca-
> tional training as recommended, I believe a sen-
> tence of 110 months to the Bureau of Prisons is
> the appropriate sentence. So it will be a sentence
> of 110 months.

At the conclusion of the hearing, the court asked defense
counsel if it "addressed any and all objections, factors, or oth-
erwise arguments that you believe should have been made on
Mr. Terronez's behalf." Defense counsel said that it "didn't
hear the Court address the arguments for a variance from the
guideline range that were in the sentencing memo," including
"that the base-offense level overstated the seriousness of the
offense because Mr. Terronez's prior convictions were not vi-
olent." In response, the court stated, "Well, I believe that I did
address them but maybe not specifically. I did factor them in
with your arguments and appreciated your arguments and
said that in some circumstances maybe even a variance to 84

months might be appropriate but not in this case."[1] This appeal followed.

## II. Discussion

A sentencing court must address a defendant's nonfrivolous mitigation arguments. *Rita v. United States*, 551 U.S. 338, 357 (2007); *see United States v. Kappes*, 782 F.3d 828, 864 (7th Cir. 2015). The explanation need not be exhaustive. *Kappes*, 782 F.3d at 864. Indeed, the court may consider mitigation arguments "implicitly and imprecisely." *United States v. Davis*, 764 F.3d 690, 694 (7th Cir. 2014) (quoting *United States v. Spiller*, 732 F.3d 767, 769 (7th Cir. 2013)). In short, an explanation suffices so long as it makes clear to a reviewing court "that the sentencing judge [gave] meaningful consideration to the section 3553(a) factors and the parties' arguments in determining how long the defendant's sentence should be." *Kappes*, 782 F.3d at 864 (quoting *United States v. Schmitz*, 717 F.3d 536, 541 (7th Cir. 2013)).

Often, the defendant's mitigation argument "takes the form of a challenge to the Guidelines themselves." *United States v. Rosales*, 813 F.3d 634, 637 (7th Cir. 2016). Of course, after *United States v. Booker*, 543 U.S. 220 (2005), the Guidelines are advisory. Still, they "reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." *Kimbrough v. United States*, 552 U.S. 85, 109 (2007) (quoting *Rita*, 551 U.S. at

---

[1] The district court also explained why it did not find persuasive Terronez's arguments that he should receive a below-Guidelines sentence because he did not know the serial number was obliterated and the Guidelines double counted his prior felony convictions. Terronez does not appeal the court's rejection of those arguments.

350). Thus, a district court may "disagree either with a particular provision of the Sentencing Guidelines or the sentencing range that results from application of the Guidelines as a whole and … impose a non-Guidelines sentence that, in [its] judgment, is more consistent with the statutory sentencing factors set out in 18 U.S.C. § 3553(a)." *Rosales*, 813 F.3d at 637 (citations omitted); *see also United States v. Corner*, 598 F.3d 411, 415 (7th Cir. 2010) (en banc) ("[D]istrict judges are at liberty to reject *any* Guideline on policy grounds—though they must act reasonably when using that power."). A defendant can seek a downward variance from the Guidelines by arguing, for example, that the Guidelines do not "reflect § 3553(a) considerations," "reflect an unsound judgment," or "do not … treat certain defendant characteristics in the proper way." *Rita*, 551 U.S. at 351, 357. While the court "may pass over in silence a blanket policy challenge" to the Guidelines, it must address a nonfrivolous "as-applied challenge." *Rosales*, 813 F.3d at 637–38. We review a district court's sentencing procedure, including whether the court adequately explained its sentence and responded to mitigation arguments, de novo. *Kappes*, 782 F.3d at 864.

There is no dispute that the PSR properly calculated Terronez's Guidelines range and more specifically, properly applied § 2K2.1(a)(2) to determine Terronez's base offense level of 24. Terronez committed the instant firearm offense after sustaining two prior "controlled substance offense" convictions; as noted above, he has two felony drug trafficking convictions in Illinois, each of which subjected him to a term of imprisonment greater than one year. Terronez sought a downward variance, however, arguing that § 2K2.1(a)(2)'s increased base offense level resulted in a greater-than-necessary sentencing range. He emphasized that his predicate felony

controlled substance offenses involved only moderate amounts of cocaine and did not include any violence, threats of violence, or the presence of firearms. Additionally, he stressed he had never been charged with using or possessing a firearm. He therefore claimed he did not present a threat with a weapon. In other words, Terronez maintained § 2K2.1(a)(2) and the resulting Guidelines range did not treat his personal characteristics and history fairly, did not reflect the § 3553(a) factors, and did not result in a sound judgment.

Terronez's theory relied almost entirely on the court's reasoning in *United States v. Fogle*, 694 F. Supp. 2d 1014 (E.D. Wis. 2010). In that case, like here, the defendant violated § 922(g) and was subject to an increased base offense level under § 2K2.1(a) due to a prior felony controlled substance offense conviction. *Id.* at 1017. But because the defendant's predicate conviction was "a relatively minor offense involving no weapons or violence," the court imposed a below-Guidelines sentence. *Id.* The court explained that § 2K2.1(a) "appears to rely on the theory that the base level should be increased proportionate to the perceived threat the felon poses with a gun," but questioned why a controlled substances offense conviction—which "need not involve violence, weapons, or any sort of aggressive behavior"—should "denote a greater threat with a gun." *Id.* Therefore, the court held that where "the offense level is increased … based on minor, prior drug cases, § 2K2.1(a) may overstate the risk that the defendant-felon poses with a gun." *Id.* at 1018.

On appeal, Terronez insists the court failed to adequately respond to his concern. He claims that while the "district court considered the general threat associated with possessing a firearm and distributing drugs, … the court did not

consider whether the Guidelines' sentencing range resulted in a sentence greater than necessary given Terronez's history and characteristics." Rather, according to Terronez, the court only considered "factors that are present for any defendant who is convicted of possessing a firearm subsequent to sustaining a conviction for a controlled substance offense." We disagree.

The court adequately performed the required "individualized" inquiry, *see United States v. Miranda*, 505 F.3d 785, 796 (7th Cir. 2007), and appropriately addressed Terronez's mitigation argument. In explaining the sentence, the court discussed Terronez's criminal history; specifically, it emphasized Terronez was recently released from prison after a fourth drug-related conviction. The court expressly acknowledged Terronez's contention that he should be entitled to a below-Guidelines sentence based on his "limited history of violence" and the fact he "may not be a major drug dealer," and it agreed that in some felon-in-possession cases, a downward variance might be justified. Yet the court determined, by applying the § 3553(a) factors to Terronez's unique circumstances, that this is not one of those cases.

While the court could have engaged with Terronez's precise argument in more detail—the court did not reference *Fogle* or consider the Sentencing Commission's motivation for creating § 2K2.1(a)—a district court need not "delve into the history of a guideline so that [it] can satisfy [it]self that the process that produced it was adequate to produce a good guideline." *United States v. Moreno-Padilla*, 602 F.3d 802, 814 (7th Cir. 2010) (alterations in original) (quoting *United States v. Aguilar-Huerta*, 576 F.3d 365, 368 (7th Cir. 2009)). And by stating that it was "not even considering whether" Terronez

had a "limited history of violence," the court implicitly re-jected the notion that § 2K2.1(a)(2)'s higher base offense level was improper based on the fact that Terronez did not have a violent history, instead endorsing the reasoning behind the Guideline. In other words, the district court did not believe § 2K2.1(a) reflects an "unsound judgment," *Rita*, 551 U.S. at 357, even when applied to individuals without a violent past. Rather, the court concluded that the Sentencing Commission made a prudent policy decision. As the court explained, the combination of drugs and gun possession is a danger to the defendant, people in the drug trade, and "most important," the public because "there is really only one reason to possess [a] firearm in the trade of either small drug dealing or large drug dealing[:] … [T]o use it."

In sum, especially given that the court imposed a within-Guidelines sentence, its explanation as to why it did not be-lieve the sentence overstated the seriousness of Terronez's felon-in-possession conviction is sufficient. *See Kappes*, 782 F.3d at 864 ("[L]ess explanation [in response to a defendant's argument in mitigation] is typically needed when a court sen-tences within an advisory guidelines range." (quoting *United States v. Curby*, 595 F.3d 794, 797 (7th Cir. 2010) (per curiam))). We conclude the court adequately addressed Terronez's miti-gation argument and affirm the 110-month sentence.

### III. Conclusion

For the foregoing reasons, we AFFIRM.