**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted March 3, 2021[*]
Decided April 5, 2021

**Before**

DANIEL A. MANION, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

AMY J. ST. EVE, *Circuit Judge*

No. 20-2198

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>*Plaintiff-Appellee*, | Appeal from the United States District<br>Court for the Southern District of<br>Indiana, Indianapolis Division. |
| *v.* | No. 1:18CR00173-001 |
| MARQUIS WATTS,<br>*Defendant-Appellant*. | Richard L. Young,<br>*Judge*. |

**O R D E R**

Marquis Watts appeals his sentence of 192 months' imprisonment for conspiring to distribute and distributing heroin and methamphetamine. Watts argues that because the district court failed to assess adequately the factors under 18 U.S.C. § 3553(a), it imposed a sentence that is unreasonably long. Because Watts contests only the weight that the court, in its discretion, assigned to the sentencing factors, and the record reflects

---

[*] The parties have moved to waive oral argument. We have determined that the facts and the legal arguments are adequately presented in the briefs and record, and that the decisional process would not be significantly aided by oral argument. See Fed. R. App. P. 32(a)(2)(C). We have thus granted their motion.

that it meaningfully considered Watts's personal history and arguments in mitigation, we affirm.

Watts sold heroin and methamphetamine from his home between 2015 and 2018. He purchased the drugs in "softball-sized" chunks from a source in Chicago and sold them to dealers and drug users in Indianapolis. Evidence of his activities came from several sources. First, confidential informants made several controlled purchases. Next, when Watts was arrested for domestic assault in 2017, police caught him red-handed with heroin. Then, in 2018, police responded to an overdose at Watts's home and found heroin, methamphetamine, and equipment and supplies for the retail packaging of drugs. They also found two loaded guns and an assault rifle, an extended magazine, and ammunition.

Watts pleaded guilty in 2019 to nine counts of conspiring to distribute and distributing over a kilogram of heroin and methamphetamine, 21 U.S.C. §§ 841(a)(1), 846, and one count of possessing heroin, 21 U.S.C. § 844(a). Sections 841(a)(1) and 846 carry a mandatory minimum of 10 years' imprisonment and a statutory maximum of life imprisonment. 21 U.S.C. § 841(b)(1)(A)(i), (viii). When the court asked Watts to describe in his own words how he came to distribute drugs, he said: "Did the wrong thing, basically, and at the wrong place and the wrong time." The court then asked Watts how often he distributed drugs, to which he replied, "I wasn't doing it too much. Just wrong place, wrong time."

Calculation of the guidelines range came next. Watts's prior offenses yielded 16 criminal history points, increased to 18 (Category VI) because he reoffended while on parole. See U.S.S.G. § 4A1.1(d). Enhancements for possessing a firearm during the crime and maintaining a drug-involved premises raised Watts's base offense level from 30 to 34. With a three-level reduction for accepting responsibility, the adjusted total offense level was 31, producing a guidelines range of 188 to 235 months' imprisonment. See U.S.S.G. §§ 3B1.1(c), 2D1.1(b)(1), (12); U.S.S.G. Sent'g Table. The government requested 210 months' imprisonment; Watts countered with a request for 168 months, arguing that he would 'age out' of criminality after 168 months, when he turned 50. See U.S.S.C., THE EFFECTS OF AGING ON RECIDIVISM AMONG FEDERAL OFFENDERS (2017).

At sentencing, the court reviewed Watts's personal history. It observed that Watts and his siblings had a difficult childhood, "fend[ing] for themselves" because of their father's absence and their mother's substance abuse. The court also noted that, although Watts was in arrears for his son's child support, the mother of his infant

daughter spoke positively of him. Additionally, it acknowledged the effects of Watts's own substance abuse, which began in his teens, his completion of outpatient counseling, and his personal statements. Watts orally apologized and stated his intention to be there for his children, unlike his parents who had not been there for him. In a written statement, Watts said he planned to earn a high school equivalency degree. Regarding prison time, he stated, "I don't think it will take me 12 or 13 years to learn my lesson."

Next, the court weighed the 18 U.S.C. § 3553(a) factors. It said that the offense was serious because Watts had distributed a significant amount of drugs both to users and other distributors. The court accepted that Watts "did not enjoy the most stable upbringing," and faced hardship because of an absent father and drug-using mother. But weighing more heavily against Watts was his criminal history: he had "been in and out of jail cells and courtrooms most of his life." The court therefore put "great weight" on the need to protect the public and Watts's likelihood to reoffend. Asked to respond to this balancing, Watts again said: "I'm a middleman … wrong place, wrong time."

The court sentenced Watts to a within-Guidelines sentence of 192 months' imprisonment and five years' supervised release. It reasoned that the sentence was sufficient but not greater than necessary to achieve the statutory goals of sentencing, particularly the need to protect the public from further crimes and promote respect for the law. When the court asked Watts if he had any questions, he exclaimed, "So you gave me 192 months? … Did I kill anybody or something? … I mean, come on, man. Everybody going to turn their back on me."

Watts first argues on appeal that the sentencing court procedurally erred by not adequately considering his history and characteristics, which are among the § 3553(a) factors. See *Gall v. United States*, 552 U.S. 38, 50 (2007). He contends that the court "merely noted" but did not meaningfully engage with his personal history and that these considerations set him apart from "the typical case."

Our review of the record satisfies us that this is not what happened. It shows that the court grappled with Watts's history and characteristics. *United States v. Banas*, 712 F.3d 1006, 1010 (7th Cir. 2013). The district court expressly noted Watts's tumultuous upbringing, his interest in self-improvement, and the favorable letter from his child's mother. But it adequately explained why it found that other factors tipped the balance against him: the need to protect the public from a person who is likely to reoffend with serious crimes.

The record contains ample support for this conclusion. Watts has a lifetime of undeterred crime, and he tried to minimize the seriousness of his offenses with a "wrong place, wrong time" defense. Moreover, a sentencing court is not required to rebut each mitigation argument exhaustively. *United States v. Terronez*, 926 F.3d 390, 393 (7th Cir. 2019); *United States v. Clay*, 943 F.3d 805, 808 (7th Cir. 2019). Sentencing courts have "great discretion" in how they address the § 3553(a) factors, *United States v. Pennington*, 908 F.3d 234, 239 (7th Cir. 2018), and we have never drawn "a bright line to tell district judges when they have said enough." *United States v. Shoffner*, 942 F.3d 818, 822 (7th Cir. 2019) (quoting *United States v. Reed*, 859 F.3d 468, 472 (7th Cir. 2017)). We are satisfied when, as here, the district court focuses on "those factors that it considered most relevant." *United States v. Barrera*, 984 F.3d 521, 524 (7th Cir. 2020).

Watts next argues that the district court erred by not discussing the data he offered suggesting that he would 'age out' of criminality after 168 months. He reiterates that at the end of a 168-month sentence he would be in a demographic with "a drastically lower rate of recidivism," and so, he reasons, 24 more months in prison is excessive. But a court is "free to reject without discussion … stock argument[s]." *United States v. Tahzib*, 513 F.3d 692, 695 (7th Cir. 2008). And a stock argument is one "without specific application to the defendant," such as those based on membership in a category. *United States v. Ramirez-Fuentes*, 703 F.3d 1038, 1047 (7th Cir. 2013). In any case, Watts's data "do not support [his] argument." *United States v. Ramirez*, 983 F.3d 959 (7th Cir. 2020). He cites a statistic of 12.8% reincarceration for all federal offenders released at age 50. But the reincarceration rate for offenders in Watts's specific criminal history category (VI) is much higher—33.78%. U.S.S.C. Rep. at A-46. Thus, the favorable inference Watts asks the court to draw is based on an inapplicable statistic, and it "rings hollow" in light of his individual conduct. See *United States v. Bustos*, 912 F.3d 1059, 1063 (7th Cir. 2019).

Finally, Watts argues that his within-Guidelines sentence is substantively unreasonable. He contends that it is out of step with what he claims is a 126-month national average for "offenses subject to drug mandatory minimums." Thus, he concludes, a 168-month sentence "could have been given" while still reflecting the seriousness of Watts's offenses, promoting respect for the law, and providing just punishment. This argument fails because Watts cited no source for his sentencing average, either before the district court or on appeal. The sentencing court therefore had no basis on which to evaluate this argument. See *United States v. Patel*, 921 F.3d 663, 670–71 (7th Cir. 2019). Furthermore, the district court confirmed on the record its awareness of the general need to "avoid unwarranted sentencing disparities" among defendants

with similar records found guilty of similar conduct. Its imposition of a within-Guidelines sentence is "presumptively reasonable," and already "gives weight and consideration to avoiding unwarranted disparities" across the nation. *United States v. Castro-Aguirre,* 983 F.3d 927, 944 (7th Cir. 2020) (quoting *United States v. Pulley*, 601 F.3d 660, 668 (7th Cir. 2010)). The court thus did not abuse its discretion by sentencing Watts to more than 168 months' imprisonment.

AFFIRMED.